## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

In Re:                                        )
                                                 )
Galen Leon Weber and                          )
Jeanette Louise Weber,                        )
             Debtors.                      )
****************************************        )
The University National Bank,                 )
                                                 )
            Plaintiff,                    )
                                                 )
    vs.                                      )
                                                 )
Galen Leon Weber                              )
            Defendant.                    )

IN PROCEEDINGS UNDER
CHAPTER 7

Case No. 11-21076

Adversary Proceeding
No._____

## COMPLAINT TO DENY DISCHARGE
## OF DEBT TO THE UNIVERSITY NATIONAL BANK

Plaintiff, The University National Bank, Lawrence, Kansas, states and alleges as follows:

### JURISDICTION

1.      This Court has jurisdiction of this matter pursuant to 11 U.S.C. § 523, 28 U.S.C. §§ 157(b) and 1334, and Bankruptcy Rules 4007 and 7001.  This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(I).  Venue is proper pursuant to 28 U.S.C. § 1409.  The name, number, chapter and district of the bankruptcy case to which this adversary proceeding pertains are set forth in the caption to this complaint.

### CLAIM FOR RELIEF

2.      Plaintiff is a national banking corporation with a place of business in Lawrence, Kansas, and is a creditor of defendant/debtor Galen Leon Weber.

3.　　On or about December 10, 2009, Websters, Inc. gave its promissory note (number 18594) to The University National Bank in the principal amount of $159,646.06 with interest at six percent (6%) per annum. A copy of this promissory note is attached as Exhibit A and incorporated fully herein.

4.　　On or about December 21, 2009, Websters, Inc. gave its promissory note (number 18597) to The University National Bank in the principal amount of $400,000.00 with interest at six percent (6%) per annum. A copy of this promissory note is attached as Exhibit B and incorporated fully herein.

5.　　Defendant/Debtor Galen Leon Weber and his wife, Jeanette Louise Weber, guarantied payment of the indebtedness of Websters, Inc. by their Unlimited Continuing Guaranty executed by them on or about September 24, 2003, and by their Unlimited Continuing Guaranty executed by them on or about May 8, 2009. A copy of each Guaranty is attached as Exhibit C and Exhibit D, respectively, and each is incorporated fully herein.

6.　　The indebtedness from Websters, Inc. (which was guarantied by Galen Leon Weber and Jeanette Louise Weber) to plaintiff was secured by all accounts, chattel paper, deposit accounts, documents, equipment, fixtures, general intangibles, instruments, inventory, and manufactured homes on floor plan as indicated by the Commercial Security Agreement dated September 24, 2003, signed by Galen L. Weber as President of Websters, Inc. A copy of this Commercial Security Agreement is attached as Exhibit E and fully incorporated herein, and proof of perfection by the financing statement filed with the Kansas Secretary of State on August 3, 1995, and

subsequent continuation statements are collectively attached as Exhibit F and fully incorporated herein.

7.    The indebtedness from Websters, Inc. (which was guarantied by Galen Leon Weber and Jeanette Louise Weber) to plaintiff was further secured by 20,000 shares of Websters, Inc. stock in the name of Galen L. Weber as indicated by the Commercial Security Agreement dated September 24, 2003, signed by Galen L. Weber individually.  Plaintiff has possession of the stock certificate.  A copy of this Commercial Security Agreement is attached as Exhibit G and fully incorporated herein.

8.    On or about December 16, 2010, Websters, Inc. executed an extension of the January 1, 2011, due date for payment of Note 18594, to February 1, 2011.  A copy of the Change in Terms Agreement that so provides (and was signed by Galen L. Weber as President) is attached as Exhibit H and incorporated fully herein.

9.    On or about December 16, 2010, Websters, Inc. executed an extension of the December 21, 2010, due date for payment of Note 18597, to February 25, 2011.  A copy of the Change in Terms Agreement that so provides (and was signed by Galen L. Weber as President) is attached as Exhibit I and incorporated fully herein.

10.    On or about March 1, 2011, Websters Inc. executed a further extension of the due date on Note 18594 to May 25, 2011.  A copy of the Modification Agreement that so provides (and was signed by Galen L. Weber as President) is attached as Exhibit J and incorporated herein.

11.    On or about March 1, 2011, Websters Inc. executed a further extension of the due date on Note 18597 to May 25, 2011.  A copy of the Modification Agreement

that so provides (and was signed by Galen L. Weber as President) is attached as Exhibit K and incorporated herein.

12. Defendant/Debtor Galen Leon Weber caused Websters, Inc. to sell at least the following three (3) manufactured homes:

> 2005 Dutch 28x72 with Vehicle Identification Number
>
> DHIN44000F;
>
> 2006 Yorkridge 56x32 with Vehicle Identification Numbers
>
> 05-06-89409501A and 05-06-89409501B; and
>
> 1999 Skyline 16x76 with Vehicle Identification Number
>
> 80520593L.

13. The proceeds from the sale of the three above-described manufactured homes were not remitted to The University National Bank.

14. Defendant/Debtor Galen Leon Weber has not paid over the proceeds from sale of the three manufactured homes and has benefitted from the conversion of plaintiff's collateral.

15. Defendant/Debtor Galen Leon Weber has admitted selling the three above-described manufactured homes out of trust without remitting the proceeds to plaintiff.

16. Plaintiff had advanced $128,984.00 to Websters, Inc. for its purchase of the three above-described manufactured homes that were sold out of trust.

17. On March 2, 2005, plaintiff advanced $55,510.00 to Websters, Inc. for Websters, Inc.'s purchase of the above-described 2005 Dutch 28x72 manufactured home with Vehicle Identification Number DHIN4400F.

18.     On January 24, 2006, plaintiff advanced $63,274.00 to Websters, Inc. for Websters, Inc.'s purchase of the above-described 2006 Yorkridge 56x32 manufactured home with Vehicle Identification Numbers 05-06-89409501A and 05-06-89409501B.

19.     On January 2, 2007, plaintiff advanced $10,200.00 to Websters, Inc. for Websters, Inc.'s purchase of the above-described 1999 Skyline 16x76 manufactured home with Vehicle Identification Number 80520593L.

20.     Plaintiff has also been unable to locate a 2002 Skyline 16x70 unit with Vehicle Identification Number 0278P for which plaintiff advanced $13,450.00 to Websters, Inc. on March 12, 2008 pursuant to an e-mail request from Galen Leon Weber to plaintiff.

21.     Defendant/Debtor Galen Leon Weber stated to plaintiff on multiple occasions, including on December 16, 2010 and March 1, 2011, that Websters, Inc. retained ownership of the three (3) above-referenced manufactured homes.  Plaintiff subsequently learned that Defendant had sold these three manufactured homes to third parties without plaintiff's knowledge or consent.

22.     Defendant/Debtor Galen L. Weber (who is also known as Galen Leon Weber) signed a "Statement of Assets, Liabilities and Net Worth as of December 31, 2010" on January 4, 2011, showing a value for his stock in Websters, Inc. of $661,247.00.  A copy of this Statement which Galen L. Weber certified to be true and correct to the best of his knowledge is hereto attached as Exhibit L and incorporated herein.

23.     Galen L. Weber owned all of the stock of Websters, Inc.

24.     Defendant/Debtor Galen Leon Weber also delivered to plaintiff a written document entitled "Websters, Inc. Balance Sheet as of December 31, 2010", which shows an Inventory value of $309,920.05.  Plaintiff understood from representations of defendant/debtor Gale Leon Weber that the Inventory included the three manufactured homes that had actually been sold despite representations to plaintiff to the contrary. A copy of the Balance Sheet is attached as Exhibit M and fully incorporated herein.

25.     Websters, Inc. obtained extensions of credit on or about December 16, 2010, December 21, 2010, and March 1, 2011, by false pretenses, a false representation or actual fraud by defendant/debtor Galen Leon Weber.  This included multiple representations by Galen Leon Weber that the three manufactured homes that had actually been sold were still part of Webster, Inc.'s inventory.

26.     Plaintiff relied upon the false statements of defendant/debtor Galen Leon Weber in agreeing to extend the maturity dates of the Notes described in paragraphs 3 and 4 of this Complaint.

27.     Galen Leon Weber was President and a director of Websters, Inc. and as such was acting in a fiduciary capacity when the three manufactured homes were sold out of trust and when he provided the Balance Sheets and other information to plaintiff.

28.     On March 30, 2011, defendant/debtor Galen Leon Weber admitted to one of plaintiff's officers that he (Galen Leon Weber) had made false statements regarding the location and disposition of three manufactured homes.

29.     Websters, Inc. filed documentation on April 6, 2011, with the Kansas Secretary of State to dissolve.

30.     Defendant/Debtor Galen Leon Weber's representations to plaintiff were known by him to be false and were made with the intent and purpose of deceiving. Plaintiff justifiably relied upon such representations and suffered loss as a proximate result thereof.

31.     The debt of defendant/debtor Galen Leon Weber to plaintiff should be declared to be non-dischargeable pursuant to 11 U.S.C. Section 523(a)(2)(A).

32.     Defendant/Debtor Galen Leon Weber committed fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny and pursuant to 11 U.S.C. Section 523(a)(4) should be denied discharge as to his indebtedness to plaintiff.

33.     Defendant/Debtor Galen Leon Weber knew of plaintiff's security interest and that the sales without remitting the proceeds to plaintiff were wrongful and would cause financial harm to the plaintiff.

34.     The acts of defendant/debtor Galen Leon Weber constitute willful and malicious injury by defendant/debtor Galen Leon Weber to property securing the indebtedness of Websters, Inc. to plaintiff and should cause his indebtedness to plaintiff to be non-dischargeable pursuant to 11 U.S.C. Section 523(a)(6).

35.     The balance owing from Websters, Inc. (and guaranteed by Galen Leon Weber and Jeanette Louise Weber) to The University National Bank as of the April 15, 2011 date of bankruptcy filing was $150,726.77 on Loan Number 18594 (consisting of $149,471.22 principal, $1,220.68 interest and $34.87 late fees) and $267,961.27 on Loan Number 18597 (consisting of $265,549.67 principal and $2,441.60 interest) for total indebtedness of $418,688.04 as of April 15, 2011.

36.     Websters, Inc. sold three other units and paid the proceeds therefrom to The University National Bank on May 23, 2011, in the amount of $85,000.00, which the bank applied to the principal amount due on Loan Number 18594.

37.     The balance owing from Websters, Inc. (and guarantied by Galen Leon Weber and Jeanette Louise Weber) to The University National Bank as of June 30, 2011, was $67,120.34 on Loan Number 18594 (consisting of $64,471.22 principal, $2,575.64 interest and $73.48 late fees) and $271,324.90 on Loan Number 18597 (consisting of $265,549.67 principal and $5,775.23 interest) for total indebtedness of $338,444.24 as of June 30, 2011.

38.     Interest continues to accrue on Websters, Inc.'s principal indebtedness to The University National Bank (which Galen Leon Weber and Jeanette Louise Weber guaranteed) at the rate of six percent (6%) per annum.

39.     The notes, security agreements and guaranties provide for payment of plaintiff's attorney fees and court costs and these amounts should be included as part of the indebtedness to be determined non-dischargeable.

40.     Plaintiff reserves the right to amend this Complaint to add such additional grounds for seeking an exception or objection to the discharge of defendant as the same may become apparent to plaintiff as the result of discovery or otherwise.

### COUNT I - 11 U.S.C. 523(a)(2)(A)

41.     Plaintiff reincorporates each and every factual allegation stated in Paragraphs 1-40 above as if more fully stated herein.

42.     Defendant/Debtor Galen Leon Weber's indebtedness to plaintiff should be excepted from discharge in bankruptcy as a debt for money that was extended due to false pretenses, a false representation or actual fraud, within the meaning of 11 U.S.C. Section 523(a)(2)(A).

### COUNT II - 11 U.S.C. 523(a)(4)

43.     Plaintiff reincorporates each and every factual allegation stated in Paragraphs 1-40 above as if more fully stated herein.

44.     Defendant/Debtor Galen Leon Weber's indebtedness to plaintiff should be excepted from discharge in bankruptcy as a debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny witin the meaning of 11 U.S.C. Section 523(a)(4).

### COUNT III - 11 U.S.C. 523(a)(6)

45.     Plaintiff reincorporates each and every factual allegation stated in Paragraphs 1-40 above as if more fully stated herein.

46.     Defendant/Debtor Galen Leon Weber's indebtedness to plaintiff should be excepted from discharge in bankruptcy as a debt subject to 11 U.S.C. Section 523(a)(6) for willful and malicious injury by the defendant/debtor to plaintiff or to property rightfully belonging to plaintiff.

### REQUEST FOR RELIEF

Plaintiff requests that this Court grant the following relief:

(a)     Entry of an order that defendant/debtor Galen Leon Weber's indebtedness to The University National Bank is not dischargeable in this or any other bankruptcy proceeding.

(b)     To the extent necessary, relief from the automatic stay imposed by the filing of the petition in this bankruptcy case so that The University National Bank may pursue collection of its claim against defendant/debtor Galen Leon Weber;

(c)     An award of plaintiff's reasonable attorney fees incurred in bringing this action; and

(d)     Such other relief against defendant/debtor Galen Leon Weber and in favor of plaintiff as this court deems just and equitable.

Dated this _13th_ day of July, 2011.

BARBER EMERSON, L.C.

By s/ Calvin J. Karlin
    Calvin J. Karlin - 09555
1211 Massachusetts Street
Post Office Box 667
Lawrence, Kansas 66044-0667
(785) 843-6600
ckarlin@barberemerson.com
Attorneys for The University National Bank

F:\CJK\B\weber.cdd.2wpd.wpd

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $159,646.06 | 12-10-2009 | 01-01-2011 | 18594 | 330 | | KEP | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** WEBSTER'S, INC.
801 N 2ND ST
LAWRENCE, KS 66044

**Lender:** THE UNIVERSITY NATIONAL BANK
P.O. BOX 1777, 1400 KASOLD DR
LAWRENCE, KS 66044
(785) 841-1988

---

**Principal Amount: $159,646.06**                                      **Date of Note: December 10, 2009**

**PROMISE TO PAY.** WEBSTER'S, INC. ("Borrower") promises to pay to THE UNIVERSITY NATIONAL BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Hundred Fifty-nine Thousand Six Hundred Forty-six & 06/100 Dollars ($159,646.06), together with interest on the unpaid principal balance from December 10, 2009, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 6.000% per annum based on a year of 360 days, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in 11 regular payments of $1,780.00 each and one irregular last payment estimated at $150,063.40. Borrower's first payment is due February 1, 2010, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on January 1, 2011, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; and then to any late charges. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: THE UNIVERSITY NATIONAL BANK, P.O. BOX 1777, 1400 KASOLD DRIVE LAWRENCE, KS 66044.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $25.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased to 18.000% per annum based on a year of 360 days. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Note or the related documents in connection with the obtaining of the loan evidenced by this Note or any security document directly or indirectly securing repayment of this Note is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Execution; Attachment.** Any execution or attachment is levied against the Collateral, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

**Change in Zoning or Public Restriction.** Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented, that limits or defines the uses which may be made of the Collateral such that the present or intended use of the Collateral, as specified in the related documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

**Default Under Other Lien Documents.** A default occurs under any other mortgage, deed of trust or security agreement covering all or any portion of the Collateral.

**Judgment.** Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Borrower and the failure by Borrower to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the indebtedness or any Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else who is not Lender's salaried employee to help collect this Note if Borrower does not pay. Borrower will be liable for all reasonable costs incurred in the collection of this Note, including but not limited to, court costs, attorneys' fees and collection agency fees, except that such costs of collection shall not include recovery of both attorneys' fees and collection agency fees.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Kansas without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Kansas.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Douglas County,

EXHIBIT A

State of Kansas.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by

A) TWO COMMERCIAL SECURITY AGREEMENTS DATED 9/24/03.

B) A COMMERCIAL SECURITY AGREEMENT DATED 7/24/08.

C) PERSONAL GUARANTEES BY GALEN AND JEANETTE WEBER INDIVIDUALLY.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**PRIOR NOTE.** 18306, 15792.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: THE UNIVERSITY NATIONAL BANK P.O. BOX 1777, 1400 KASOLD DRIVE LAWRENCE, KS 66044.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, protest and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

WEBSTER'S, INC.

By: _____
GALEN L WEBER, President of WEBSTER'S, INC.

LENDER:

THE UNIVERSITY NATIONAL BANK

X _____
Kenneth E Peirce, Senior Vice President

LASER PRO Lending, Ver. 5.48.10.001 Copr. Harland Financial Solutions, Inc. 1997, 2009. All Rights Reserved. - KS R:\CFI\LPL\D20.FC TR-194 PR-47

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $400,000.00 | 12-21-2009 | 12-21-2010 | 18597 | | | KEP | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** WEBSTER'S, INC.
801 N 2ND ST
LAWRENCE , KS 66044

**Lender:** THE UNIVERSITY NATIONAL BANK
P.O. BOX 1777, 1400 KASOLD DR
LAWRENCE, KS 66044
(785) 841-1988

---

**Principal Amount: $400,000.00**                                        **Date of Note: December 21, 2009**

**PROMISE TO PAY.** WEBSTER'S, INC. ("Borrower") promises to pay to THE UNIVERSITY NATIONAL BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of Four Hundred Thousand & 00/100 Dollars ($400,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 6.000% per annum based on a year of 360 days. Interest shall be calculated from the date of each advance until repayment of each advance. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in accordance with the following payment schedule:

ONE INTEREST ONLY PAYMENT DUE FEBRUARY 15, 2010. PRINCIPAL PAYMENTS OF $1,200.00, PLUS OUTSTANDING INTEREST BEGINNING MARCH 15, 2010 AND CONTINUING AT MONTHLY INTERVALS THEREAFTER. A FINAL PAYMENT OF THE UNPAID PRINCIPAL BALANCE PLUS ACCRUED INTEREST IS DUE AND PAYABLE ON DECEMBER 21, 2010.

Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; and then to any late charges. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: THE UNIVERSITY NATIONAL BANK, P.O. BOX 1777, 1400 KASOLD DRIVE LAWRENCE, KS 66044.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $25.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased to 18.000% per annum based on a year of 360 days. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Note or the related documents in connection with the obtaining of the loan evidenced by this Note or any security document directly or indirectly securing repayment of this Note is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Execution; Attachment.** Any execution or attachment is levied against the Collateral, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

**Change in Zoning or Public Restriction.** Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented, that limits or defines the uses which may be made of the Collateral such that the present or intended use of the Collateral, as specified in the related documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

**Default Under Other Lien Documents.** A default occurs under any other mortgage, deed of trust or security agreement covering all or any portion of the Collateral.

**Judgment.** Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Borrower and the failure by Borrower to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the indebtedness or any Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will be liable for all reasonable costs incurred in the collection of this Note, including but not limited to, court costs, attorneys' fees and collection agency fees, except that such costs of collection shall not include recovery of both attorneys' fees and collection agency fees.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Kansas without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Kansas.

EXHIBIT B

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Douglas County, State of Kansas.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by

A) TWO COMMERCIAL SECURITY AGREEMENTS DATED 9/24/03.

B) A COMMERCIAL SECURITY AGREEMENT DATED 7/24/08.

C) PERSONAL GUARANTEES BY GALEN AND JEANETTE WEBER INDIVIDUALLY.

**LINE OF CREDIT.** This Note evidences a revolving line of credit. Advances under this Note may be requested orally by Borrower or as provided in this paragraph. All oral requests shall be confirmed in writing on the day of the request. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person or persons are authorized to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: GALEN L WEBER, President of WEBSTER'S, INC. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Note if: (A) Borrower or any guarantor is in default under the terms of this Note or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or any other loan with Lender; (D) Borrower has applied funds provided pursuant to this Note for purposes other than those authorized by Lender; or (E) Lender in good faith believes itself insecure.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**PRIOR NOTE.** 13878.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: THE UNIVERSITY NATIONAL BANK P.O. BOX 1777, 1400 KASOLD DRIVE LAWRENCE, KS 66044.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, protest and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

| | |
|---|---|
| **Borrower's Initials**  | **NO ORAL AGREEMENTS.** This written agreement is the final expression of the agreement between Lender and Borrower and may not be contradicted by evidence of any prior oral agreement or of a contemporaneous oral agreement between Lender and Borrower. |
| **Lender's Initials** | **NONSTANDARD TERMS.** The following space contains all nonstandard terms, including all previous oral agreements, if any, between Lender and Borrower: |
| | By initialing the boxes to the left, Lender and Borrower affirm that no unwritten oral agreement exists between them. |

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

WEBSTER'S, INC.

By:_____
GALEN L WEBER, President of WEBSTER'S, INC.

LENDER:

THE UNIVERSITY NATIONAL BANK

X_____
Kenneth E Peirce, Senior Vice President

LASER PRO Lending, Ver. 5.49.10.001 Copr. Harland Financial Solutions, Inc. 1997, 2009. All Rights Reserved. - KS R:\CFI\LPL\D20.FC TR-105 PR-47



THE UNIVERSITY NATIONAL BANK

# UNLIMITED CONTINUING GUARANTY

THE UNIVERSITY NATIONAL BANK
1400 KASOLD DRIVE, PO BOX 1777
LAWRENCE, KS 66044
(785) 841-1988    "LENDER"

| GUARANTOR | BORROWER |
|---|---|
| GALEN L WEBER<br>JEANETTE L WEBER | WEBSTER'S, INC. |

| ADDRESS | ADDRESS |
|---|---|
| 3308 RIVERVIEW ROAD<br>LAWRENCE, KS 66049 | 801 NORTH SECOND STREET<br>LAWRENCE, KS 66044 |

| TELEPHONE NO. | IDENTIFICATION NO. | TELEPHONE NO. | IDENTIFICATION NO. |
|---|---|---|---|
| (785) 749-4152 | 3384 | (785) 842-7700 | 5176 |

**1. CONSIDERATION.** This Guaranty is being executed to induce Lender, indicated above, to enter into one or more loans or other financial accommodations with or on behalf of Borrower.

**2. GUARANTY.** Guarantor hereby unconditionally guarantees the prompt and full payment and performance, and promises to pay all of Borrower's present and future, joint and/or several, direct and indirect, absolute and contingent, express and implied, indebtedness, liabilities, obligations and covenants (cumulatively "Indebtedness") to Lender when due (whether upon maturity or by demand, acceleration or otherwise). Guarantor's liabilities and obligations under this Guaranty ("Obligations") shall be unlimited and shall include all present and future written agreements between Borrower and Lender (whether executed for the same or different purposes than the foregoing), evidencing the Indebtedness, together with all interest and all of Lender's expenses and costs, including but not limited to reasonable attorney's fees incurred in connection with the Indebtedness including any amendments, extensions, modifications, renewals, replacements or substitutions thereto, including, but not limited to, the following Indebtedness:

| INTEREST RATE | PRINCIPAL AMOUNT/ CREDIT LIMIT | FUNDING/ AGREEMENT DATE | MATURITY DATE | CUSTOMER NUMBER | LOAN NUMBER |
|---|---|---|---|---|---|
| 6.000% | $500,000.00 | 09/24/03 | 09/24/04 | 5176 | 12610 |

**3. SECURITY INTEREST.** ☐ If checked, the Obligations under this Guaranty are secured by the collateral described in any security instrument(s) executed in connection with this Guaranty and any collateral described in any other security instrument(s) securing this Guaranty or all of Guarantor's obligations.

**4. ABSOLUTE AND CONTINUING NATURE OF GUARANTY.** Guarantor's Obligations are absolute and continuing and shall not be affected or impaired if Lender repeatedly and unconditionally amends, renews, extends, compromises, exchanges, fails to exercise or perfect rights in, impairs or releases any collateral or any of the Indebtedness owed by any Borrower, Co-guarantor or third party (even if such impairs Guarantor's rights of subrogation) to Lender or any of Lender's rights against any Borrower, Co-guarantor, third party or collateral. In addition, the Obligations shall not be affected or impaired by the discharge (including but not limited to any inability to collect a deficiency judgment against) death, incompetency, termination, dissolution, insolvency, business cessation, or other financial deterioration of any Borrower, Guarantor, or third party or by any state of facts or the happening from time to time of any event, including without limitation: The invalidity, irregularity, illegality or unenforceability of, or any defect in, the promissory note or any agreement or any collateral security for the Obligation (the "Collateral"); Any present or future law or order of any government (de jure or de facto) or of any agency thereof purporting to reduce, amend or otherwise affect the Indebtedness of the Borrower or any other obligor or any other terms of payment; The waiver, compromise, settlement, release or termination of any or all of the obligations, covenants or agreements of the Borrower under the promissory note or any agreement or of any party named as a Guarantor under this Guaranty; The failure to give notice to the Guarantor of the occurrence of an event of default under the promissory note or any agreement; The loss, release, sale, exchange, surrender or other change in any Collateral; The repeated extension of the time for payment of any principal of or interest on the Indebtedness or of the time for performance of any obligations, covenants or agreements under or arising out of the promissory note or any agreement or the repeated extension or the renewal of any thereof; The modification or amendment (whether material or otherwise) of any obligation, covenant or agreement set forth in the promissory note or any agreement; The taking of, or the failure to take, any of the actions referred to in the promissory note or any agreement; Any failure, omission or delay on the part of the Lender to enforce, assert or exercise any right, power or remedy conferred on the Lender in the promissory note or any agreement; The voluntary or involuntary liquidation, dissolution, sale or other disposition of all or substantially all the assets, marshalling of assets and liabilities, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition with creditors or readjustment of, or other similar proceedings affecting the Guarantor or the Borrower or any of their assets, or any allegation or contest of the validity of the promissory note or any agreement; The default or failure of the Guarantor to fully perform any Obligations set forth in this Guaranty; Any event or action that would, in the absence of this paragraph, result in the release or discharge of the Guarantor from the performance or observance of any Obligation, covenant or agreement contained in this Guaranty; and, Any other circumstances which might otherwise constitute a legal or equitable discharge or defense of a surety or a guarantor.

**5. DIRECT AND UNCONDITIONAL NATURE OF GUARANTY.** Guarantor's Obligations are direct and unconditional and may be enforced without requiring Lender to exercise, enforce, or exhaust any right or remedy against any Borrower, Co-guarantor, third party, or any security or Collateral.

**6. WAIVER.** Guarantor hereby waives notice of the acceptance of this Guaranty; notice of present and future extensions of credit and other financial accommodations by Lender to any Borrower; notice of the obtaining or release of any guaranty, assignment, or other security for any of the Indebtedness; notice of presentment for payment, demand, protest, dishonor, default, and nonpayment pertaining to the Indebtedness and this Guaranty and all other notices and demands pertaining to the Indebtedness and this Guaranty; and, any and all defenses to payment as permitted by law.

GUARANTOR ACKNOWLEDGES THAT GUARANTOR HAS READ, UNDERSTANDS, AND AGREES TO THE TERMS AND CONDITIONS OF THIS GUARANTY INCLUDING THE TERMS AND CONDITIONS ON THE REVERSE SIDE. GUARANTOR HAS EXECUTED THIS GUARANTY WITH THE INTENT TO BE LEGALLY BOUND NOTWITHSTANDING ANY FAILURE BY ANY OTHER PERSON TO SIGN THIS GUARANTY. GUARANTOR ACKNOWLEDGES RECEIPT OF AN EXACT COPY OF THIS GUARANTY.

Dated: September 24, 2003

GUARANTOR: GALEN L WEBER

_____
GALEN L WEBER

GUARANTOR:

GUARANTOR: JEANETTE L WEBER

_____
JEANETTE L WEBER

GUARANTOR:

MAST209 © John H. Harland Co. (4/7/00) (800) 937-3799

EXHIBIT C

**7. NATURE OF GUARANTY.** This Guaranty [is] a guaranty of payment and not of collection, and the [Gu]arantor hereby waives the right to require that any action be brought first against the Borrower[, an]y other Guarantor, or any security or the Collateral, [or] require that resort be made to any security or the Collateral or to any balance of any deposit acco[un]t or credit on the books of the Lender in favor of the Borro[w]er or of any Guarantor.

**8. EVENTS OF DEFAULT.** An Event of Default shall occur under this Guaranty in the event that any Guarantor:

(a) fails to pay any amount under this Guaranty or any Obligation to Lender when due (whether such amount is due at maturity by acceleration or otherwise);
(b) fails to perform any obligation or breaches any warranty or covenant to Lender contained in any loan document or this Guaranty or any other present or future promissory note or written agreement;
(c) provides or causes any false or misleading signature or representation to be provided to Lender;
(d) sells, conveys, or transfers rights in any Collateral securing this Guaranty without the written approval of Lender, destroys, loses or damages such Collateral in any material respect, or subjects such Collateral to seizure or confiscation;
(e) has a garnishment, judgment, tax levy, attachment or lien entered or served against any Guarantor, or any of their property;
(f) dies, becomes legally incompetent, is dissolved or terminated, ceases to operate its business, becomes insolvent, makes an assignment for the benefit of creditors, or becomes the subject of any bankruptcy, insolvency or debtor rehabilitation proceeding;
(g) fails to provide Lender evidence of satisfactory financial condition; or
(h) causes Lender to deem itself insecure due to a significant decline in the value of any collateral securing this Guaranty, or Lender in good faith, believes the prospect of payment or performance is impaired.

**9. RIGHTS OF LENDER ON EVENT OF DEFAULT.** If there is an Event of Default under this Guaranty, Lender shall be entitled to exercise one or more of the following remedies without notice or demand (except as required by law):

(a) to declare Guarantor's Obligations under this Guaranty immediately due and payable in full, such acceleration shall be automatic and immediate if the Event of Default is a filing under the Bankruptcy Code;
(b) to collect the outstanding obligations under this Guaranty with or without resorting to judicial process;
(c) to take possession of any Collateral in any manner permitted by law;
(d) to require Guarantor to deliver and make available to Lender any Collateral at a place reasonably convenient to Guarantor and Lender;
(e) to sell, lease or otherwise dispose of any Collateral and collect any deficiency balance with or without resorting to judicial process;
(f) to set-off Guarantor's Obligations under this Guaranty against any amounts due to Guarantor including, but not limited to, monies, instruments, and deposit accounts maintained with Lender; and
(g) to exercise all other rights available to Lender under any other written agreement or applicable law.

Lender's rights are cumulative and may be exercised together, or separately, and in any order. Lender's remedies under this paragraph are in addition to those available at common law, including, but not limited to the right to set-off.

**10. SUBORDINATION.** The payment of any present or future indebtedness of Borrower to Guarantor will be postponed and subordinated to the payment in full of any present or future indebtedness of Borrower to Lender during the term of this Guaranty. In the event that Guarantor receives any monies, instruments, or other remittances to be applied against Borrower's obligations to Guarantor, Guarantor will hold these funds in trust for Lender and immediately endorse or assign (if necessary) and deliver these monies, instruments and other remittances to Lender. Guarantor agrees that Lender shall be preferred to Guarantor in any assignment for the benefit of Borrower's creditors in any bankruptcy, insolvency, liquidation, or reorganization proceeding commenced by or against Borrower in any federal or state court.

**11. INDEPENDENT INVESTIGATION.** Guarantor's execution and delivery to Lender of this Guaranty is based solely upon Guarantor's independent investigation of Borrower's financial condition and not upon any written or oral representation of Lender in any manner. Guarantor assumes full responsibility for obtaining any additional information regarding Borrower's financial condition and Lender shall not be required to furnish Guarantor with any information of any kind regarding Borrower's financial condition.

**12. ACCEPTANCE OF RISKS.** Guarantor acknowledges the absolute and continuing nature of this Guaranty and voluntarily accepts the full range of risks associated herewith including, but not limited to, the risk that Borrower's financial condition shall deteriorate or, if this Guaranty is unlimited, the risk that Borrower shall incur additional indebtedness to Lender in the future.

**13. SUBROGATION.** Guarantor hereby irrevocably waives and releases the Borrower from all "claims" (as defined in Section 101(5) of the Bankruptcy Code) to which Guarantor is or would, at any time, be entitled by virtue of its obligations under this Guaranty, including, without limitation, any right of subrogation (whether contractual, under Section 509 of the Bankruptcy Code or otherwise), reimbursement, contribution, exoneration or similar right against the Borrower, any co-guarantor, any third party or any Collateral.

**14. APPLICATION OF PAYMENTS.** Lender will be entitled to apply any payments or other monies received from Borrower, any third party, or any collateral against Borrower's present and future indebtedness to Lender in any order.

**15. TERMINATION.** This Guaranty shall remain in full force and effect until Lender executes and delivers to Guarantor a written release thereof. Notwithstanding the foregoing, Guarantor shall be entitled to terminate any unlimited guaranty of Borrower's future indebtedness to Lender following any anniversary of this Guaranty by providing Lender with sixty (60) or more days' written notice of such termination by hand-delivery or certified mail. Notice shall be deemed given when received by Lender. Such notice of termination shall not affect or impair any of the agreements and Obligations of the Guarantor under this Guaranty with respect to any indebtedness existing prior to the time of actual receipt of such notice by Lender, any extensions, modifications, amendments, replacements or renewals thereof, and any interest on any of the foregoing.

**16. ASSIGNMENT.** Guarantor agrees not to assign any of Guarantor's rights or Obligations described in this Guaranty without Lender's prior written consent which consent may be withheld by Lender in its sole discretion. Guarantor agrees that Lender is entitled to assign some or all of its rights and remedies described in this Guaranty without notice to, or the prior consent of Guarantor in any manner. Unless the Lender shall otherwise consent in writing, the Lender shall have an unimpaired right, prior and superior to that of any assignee, to enforce this Guaranty for the benefit of the Lender, as to those Obligations that the Lender has not assigned.

**17. MODIFICATION AND WAIVER.** The modification or waiver of any of Guarantor's Obligations or Lender's rights under this Guaranty must be contained in a writing signed by Lender. Lender may delay in exercising or failing to exercise any of its rights without causing a waiver of those rights. A waiver on one occasion shall not constitute a waiver on any other occasion.

**18. SUCCESSORS AND ASSIGNS.** This Guaranty shall be binding upon and inure to the benefit of Guarantor and Lender and their respective successors, assigns, trustees, receivers, administrators, personal representatives, legatees, and devisees.

**19. NOTICE.** Any notice or other communication to be provided under this Guaranty shall be in writing and sent to the parties at the addresses described in this Guaranty or such other addresses as the parties may designate in writing from time to time.

**20. SEVERABILITY.** If any provision of this Guaranty is invalid, illegal or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

**21. APPLICABLE LAW.** This Guaranty shall be governed by the laws of the state of **Kansas** _____. Unless applicable law provides otherwise, Guarantor consents to the jurisdiction and venue of any court located in such state selected by Lender, in its discretion, in the event of any legal proceeding under this Guaranty.

**22. COLLECTION COSTS.** To the extent permitted by law, Guarantor agrees to pay Lender's reasonable fees and costs, including, but not limited to, fees and costs of attorneys and other agents (including without limitation paralegals, clerks and consultants) whether or not any attorney or agent is an employee of Lender, which are incurred by Lender in collecting any amount due or enforcing any right or remedy under this Guaranty, including, but not limited to, all fees and costs incurred on appeal, in bankruptcy, for post-judgment collection actions, and whether or not suit is brought.

**23. REPRESENTATIONS OF GUARANTOR.** Guarantor acknowledges receipt of reasonably equivalent value in consideration for the execution of this Guaranty and represents that, after giving effect to this Guaranty, the fair market value of Guarantor's assets exceeds Guarantor's total liabilities, including contingent, subordinate and unliquidated liabilities, that Guarantor has sufficient cash flow to meet debts as they mature, and that Guarantor does not have unreasonably small capital. Guarantor represents that all required director and shareholder consents to enter into this Guaranty have been obtained.

**24. MISCELLANEOUS.** Guarantor and Lender agree that time is of the essence. Guarantor will provide Lender with current financial statements and other financial information upon request. All references to Guarantor in this Guaranty shall include all entities or persons signing this Guaranty. If there is more than one Guarantor, their obligations under this Guaranty shall be joint and several. Nothing in this Guaranty is intended to require, nor should it be construed to require, the signature of Borrower's spouse in violation of Regulation B (12 C.F.R. Part 202.7) in connection with this or any other indebtedness of Borrower to Lender. This Guaranty represents the complete and integrated understanding between Guarantor and Lender regarding the terms hereof.

**25. WAIVER OF JURY TRIAL. LENDER AND GUARANTOR HEREBY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY CIVIL ACTION ARISING OUT OF, OR BASED UPON, THIS GUARANTY.**

**26. ADDITIONAL TERMS:**

MAST209B © John H. Harland Co. (4/7/00) (800) 937-3799



## UNLIMITED CONTINUING GUARANTY

| GUARANTOR | BORROWER |
|---|---|
| GALEN L WEBER<br>JEANETTE L WEBER | WEBSTER'S, INC. |
| **ADDRESS**<br>3308 RIVERVIEW ROAD<br>LAWRENCE, KS 66049 | **ADDRESS**<br>801 NORTH SECOND STREET<br>LAWRENCE, KS 66044 |
| TELEPHONE NO.  IDENTIFICATION NO.<br>(785)749-4152    ████3384 | TELEPHONE NO.  IDENTIFICATION NO.<br>(785)842-7700    ████5176 |

**1. CONSIDERATION.** This Guaranty is being executed to induce Lender, indicated above, to enter into one or more loans or other financial accommodations with or on behalf of Borrower.

**2. GUARANTY.** Guarantor hereby unconditionally guarantees the prompt and full payment and performance, and promises to pay all of Borrower's present and future, joint and/or several, direct and indirect, absolute and contingent, express and implied, contractual and tortious, liabilities, obligations and covenants (cumulatively "Indebtedness") to Lender when due (whether upon maturity or by demand, acceleration or otherwise). Guarantor's liabilities and obligations under this Guaranty ("Obligations") shall be unlimited and shall include all present and future written agreements between Borrower and Lender (**whether executed for the same or different purposes than the foregoing**), evidencing the Indebtedness, together with all interest and all of Lender's expenses and costs, including but not limited to reasonable attorney's fees incurred in connection with the Indebtedness including any amendments, extensions, modifications, renewals, replacements or substitutions thereto, including, but not limited to, the following Indebtedness:

| INTEREST RATE | PRINCIPAL AMOUNT/ CREDIT LIMIT | FUNDING/ AGREEMENT DATE | MATURITY DATE | CUSTOMER NUMBER | LOAN NUMBER |
|---|---|---|---|---|---|
| Fixed | $151,096.94 | 05/08/09 | 05/08/10 | ████5176 | 18306 |

**3. SECURITY INTEREST.** ☐ If checked, the Obligations under this Guaranty are secured by the collateral described in any security instrument(s) executed in connection with this Guaranty and any collateral described in any other security instrument(s) securing this Guaranty or all of Guarantor's obligations.

**4. ABSOLUTE AND CONTINUING NATURE OF GUARANTY.** Guarantor's Obligations are absolute and continuing and shall not be affected or impaired if Lender repeatedly and unconditionally amends, renews, extends, compromises, exchanges, fails to exercise or perfect rights in, impairs or releases any collateral or any of the Indebtedness owed by any Borrower, Co-guarantor or third party (even if such impairs Guarantor's rights of subrogation) to Lender or any of Lender's rights against any Borrower, Co-guarantor, third party, or collateral. In addition, the Obligations shall not be affected or impaired by the discharge (including but not limited to any inability to collect a deficiency judgment against) death, incompetency, termination, dissolution, insolvency, business cessation, or other financial deterioration of any Borrower, Guarantor, or third party or by any state of facts or the happening from time to time of any event, including without limitation: The invalidity, irregularity, illegality or unenforceability of, or any defect in, the promissory note or any agreement or any collateral security for the Obligation (the "Collateral"); Any present or future law or order of any government (de jure or de facto) or of any agency thereof purporting to reduce, amend or otherwise affect the Indebtedness of the Borrower or any other obligor or any other terms of payment; The waiver, compromise, settlement, release or termination of any or all of the obligations, covenants or agreements of the Borrower under the promissory note or any agreement or of any party named as a Guarantor under this Guaranty; The failure to give notice to the Guarantor of the occurrence of an event of default under the promissory note or any other agreement; The loss, release, sale, exchange, surrender or other change in any Collateral; The repeated extension of the time for payment of any principal of or interest on the Indebtedness or of the time for performance of any obligations, covenants or agreements under or arising out of the promissory note or any agreement or the repeated extension or the renewal of any thereof; The modification or amendment (whether material or otherwise) of any obligation, covenant or agreement set forth in the promissory note or any agreement; The taking of, or the omission to take, any of the actions referred to in the promissory note or any agreement; Any failure, omission or delay on the part of the Lender to enforce, assert or exercise any right, power or remedy conferred on the Lender in the promissory note or any agreement; The voluntary or involuntary liquidation, dissolution, sale or other disposition of all or substantially all the assets, marshalling of assets and liabilities, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition with creditors or readjustment of, or other similar proceedings affecting the Guarantor or the Borrower or any of their assets, or any allegation or contest of the validity of the promissory note or any agreement; The default or failure of the Guarantor to fully perform any Obligations set forth in this Guaranty; Any event or action that would, in the absence of this paragraph, result in the release or discharge of the Guarantor from the performance or observance of any Obligation, covenant or agreement contained in this Guaranty; and, Any other circumstances which might otherwise constitute a legal or equitable discharge or defense of a surety or a guarantor.

**5. DIRECT AND UNCONDITIONAL NATURE OF GUARANTY.** Guarantor's Obligations are direct and unconditional and may be enforced without requiring Lender to exercise, enforce, or exhaust any right or remedy against any Borrower, Co-guarantor, third party, or any security or Collateral.

**6. WAIVER.** Guarantor hereby waives notice of the acceptance of this Guaranty; notice of present and future extensions of credit and other financial accommodations by Lender to any Borrower; notice of the obtaining or release of any guaranty, assignment, or other security for any of the Indebtedness; notice of presentment for payment, demand, protest, dishonor, default, and nonpayment pertaining to the Indebtedness and this Guaranty and all other notices and demands pertaining to the Indebtedness and this Guaranty; and, any and all defenses to payment as permitted by law.

GUARANTOR ACKNOWLEDGES THAT GUARANTOR HAS READ, UNDERSTANDS, AND AGREES TO THE TERMS AND CONDITIONS OF THIS GUARANTY INCLUDING THE TERMS AND CONDITIONS ON THE REVERSE SIDE. GUARANTOR HAS EXECUTED THIS GUARANTY WITH THE INTENT TO BE LEGALLY BOUND NOTWITHSTANDING ANY FAILURE BY ANY OTHER PERSON TO SIGN THIS GUARANTY. GUARANTOR ACKNOWLEDGES RECEIPT OF AN EXACT COPY OF THIS GUARANTY.

Dated: May 08, 2009

GUARANTOR: GALEN L WEBER

_____
GALEN L WEBER

GUARANTOR:

GUARANTOR: JEANETTE L WEBER

_____
JEANETTE L WEBER

GUARANTOR:

EXHIBIT D

MAST209 © John H. Harland Co. (4/7/00) (800) 937-3799

**7. NATURE OF GUARANTY.** This Guaranty is a guaranty of payment and not of collection, and the Guarantor hereby waives the right to require that any action be brought first against the Borrower, any other Guarantor, or any security or the Collateral, or to require that resort be made to any security or the Collateral or to any balance of any deposit account or credit on the books of the Lender in favor of the Borrower or any Guarantor.

**8. EVENTS OF DEFAULT.** An Event of Default shall occur under this Guaranty in the event that any Guarantor:

    (a) fails to pay any amount under this Guaranty or any Obligation to Lender when due (whether such amount is due at maturity by acceleration or otherwise);

    (b) fails to perform any obligation or breaches any warranty or covenant to Lender contained in any loan document or this Guaranty or any other present or future promissory note or written agreement;

    (c) provides or causes any false or misleading signature or representation to be provided to Lender;

    (d) sells, conveys, or transfers rights in any Collateral securing this Guaranty without the written approval of Lender, destroys, loses or damages such Collateral in any material respect, or subjects such Collateral to seizure or confiscation;

    (e) has a garnishment, judgment, tax levy, attachment or lien entered or served against any Guarantor, or any of their property;

    (f) dies, becomes legally incompetent, is dissolved or terminated, ceases to operate its business, becomes insolvent, makes an assignment for the benefit of creditors, or becomes the subject of any bankruptcy, insolvency or debtor rehabilitation proceeding;

    (g) fails to provide Lender evidence of satisfactory financial condition; or

    (h) causes Lender to deem itself insecure due to a significant decline in the value of any collateral securing this Guaranty, or Lender in good faith, believes the prospect of payment or performance is impaired.

**9. RIGHTS OF LENDER ON EVENT OF DEFAULT.** If there is an Event of Default under this Guaranty, Lender shall be entitled to exercise one or more of the following remedies without notice or demand (except as required by law):

    (a) to declare Guarantor's Obligations under this Guaranty immediately due and payable in full, such acceleration shall be automatic and immediate if the Event of Default is a filing under the Bankruptcy Code;

    (b) to collect the outstanding obligations under this Guaranty with or without resorting to judicial process;

    (c) to take possession of any Collateral in any manner permitted by law;

    (d) to require Guarantor to deliver and make available to Lender any Collateral at a place reasonably convenient to Guarantor and Lender;

    (e) to sell, lease or otherwise dispose of any Collateral and collect any deficiency balance with or without resorting to judicial process;

    (f) to set-off Guarantor's Obligations under this Guaranty against any amounts due to Guarantor including, but not limited to, monies, instruments, and deposit accounts maintained with Lender; and

    (g) to exercise all other rights available to Lender under any other written agreement or applicable law.

Lender's rights are cumulative and may be exercised together, or separately, and in any order. Lender's remedies under this paragraph are in addition to those available at common law, including, but not limited to the right to set-off.

**10. SUBORDINATION.** The payment of any present or future indebtedness of Borrower to Guarantor will be postponed and subordinated to the payment in full of any present or future Indebtedness of Borrower to Lender during the term of this Guaranty. In the event that Guarantor receives any monies, Instruments, or other remittances to be applied against Borrower's obligations to Guarantor, Guarantor will hold these funds in trust for Lender and immediately endorse or assign (if necessary) and deliver these monies, instruments and other remittances to Lender. Guarantor agrees that Lender shall be preferred to Guarantor in any assignment for the benefit of Borrower's creditors in any bankruptcy, insolvency, liquidation, or reorganization proceeding commenced by or against Borrower in any federal or state court.

**11. INDEPENDENT INVESTIGATION.** Guarantor's execution and delivery to Lender of this Guaranty is based solely upon Guarantor's independent investigation of Borrower's financial condition and not upon any written or oral representation of Lender in any manner. Guarantor assumes full responsibility for obtaining any additional information regarding Borrower's financial condition and Lender shall not be required to furnish Guarantor with any information of any kind regarding Borrower's financial condition.

**12. ACCEPTANCE OF RISKS.** Guarantor acknowledges the absolute and continuing nature of this Guaranty and voluntarily accepts the full range of risks associated herewith including, but not limited to, the risk that Borrower's financial condition shall deteriorate or, if this Guaranty is unlimited, the risk that Borrower shall incur additional Indebtedness to Lender in the future.

**13. SUBROGATION.** Guarantor hereby irrevocably waives and releases the Borrower from all "claims" (as defined in Section 101(5) of the Bankruptcy Code) to which Guarantor is or would, at any time, be entitled by virtue of its obligations under this Guaranty, including, without limitation, any right of subrogation (whether contractual, under Section 509 of the Bankruptcy Code or otherwise), reimbursement, contribution, exoneration or similar right against the Borrower, any co-guarantor, any third party or any Collateral.

**14. APPLICATION OF PAYMENTS.** Lender will be entitled to apply any payments or other monies received from Borrower, any third party, or any collateral against Borrower's present and future Indebtedness to Lender in any order.

**15. TERMINATION.** This Guaranty shall remain in full force and effect until Lender executes and delivers to Guarantor a written release thereof. Notwithstanding the foregoing, Guarantor shall be entitled to terminate any unlimited guaranty of Borrower's future Indebtedness to Lender following any anniversary of this Guaranty by providing Lender with sixty (60) or more days' written notice of such termination by hand-delivery or certified mail. Notice shall be deemed given when received by Lender. Such notice of termination shall not affect or impair any of the agreements and Obligations of the Guarantor under this Guaranty with respect to any Indebtedness existing prior to the time of actual receipt of such notice by Lender, any extensions, modifications, amendments, replacements or renewals thereof, and any interest on any of the foregoing.

**16. ASSIGNMENT.** Guarantor agrees not to assign any of Guarantor's rights or Obligations described in this Guaranty without Lender's prior written consent which consent may be withheld by Lender in its sole discretion. Guarantor agrees that Lender is entitled to assign some or all of its rights and remedies described in this Guaranty without notice to, or the prior consent of Guarantor in any manner. Unless the Lender shall otherwise consent in writing, the Lender shall have an unimpaired right, prior and superior to that of any assignee, to enforce this Guaranty for the benefit of the Lender, as to those Obligations that the Lender has not assigned.

**17. MODIFICATION AND WAIVER.** The modification or waiver of any of Guarantor's Obligations or Lender's rights under this Guaranty must be contained in a writing signed by Lender. Lender may delay in exercising or failing to exercise any of its rights without causing a waiver of those rights. A waiver on one occasion shall not constitute a waiver on any other.

**18. SUCCESSORS AND ASSIGNS.** This Guaranty shall be binding upon and inure to the benefit of Guarantor and Lender and their respective successors, assigns, trustees, receivers, administrators, personal representatives, legatees, and devisees.

**19. NOTICE.** Any notice or other communication to be provided under this Guaranty shall be in writing and sent to the parties at the addresses described in this Guaranty or such other addresses as the parties may designate in writing from time to time.

**20. SEVERABILITY.** If any provision of this Guaranty is invalid, illegal or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

**21. APPLICABLE LAW.** This Guaranty shall be governed by the laws of the state of   **Kansas**  . Unless applicable law provides otherwise, Guarantor consents to the jurisdiction and venue of any court located in such state selected by Lender, in its discretion, in the event of any legal proceeding under this Guaranty.

**22. COLLECTION COSTS.** To the extent permitted by law, Guarantor agrees to pay Lender's reasonable fees and costs, including, but not limited to, fees and costs of attorneys and other agents (including without limitation paralegals, clerks and consultants) whether or not any attorney or agent is an employee of Lender, which are incurred by Lender in collecting any amount due or enforcing any right or remedy under this Guaranty, including, but not limited to, all fees and costs incurred on appeal, in bankruptcy, for post-judgment collection actions, and whether or not suit is brought.

**23. REPRESENTATIONS OF GUARANTOR.** Guarantor acknowledges receipt of reasonably equivalent value in consideration for the execution of this Guaranty and represents that, after giving effect to this Guaranty, the fair market value of Guarantor's assets exceeds Guarantor's total liabilities, including contingent, subordinate and unliquidated liabilities, that Guarantor has sufficient cash flow to meet debts as they mature, and that Guarantor does not have unreasonably small capital. Guarantor represents that all required director and shareholder consents to enter into this Guaranty have been obtained.

**24. MISCELLANEOUS.** Guarantor and Lender agree that time is of the essence. Guarantor will provide Lender with current financial statements and other financial information upon request. All references to Guarantor in this Guaranty shall include all entities or persons signing this Guaranty. If there is more than one Guarantor, their obligations under this Guaranty shall be joint and several. Nothing in this Guaranty is intended to require, nor should it be construed to require, the signature of Borrower's spouse in violation of Regulation B (12 C.F.R. Part 202.7) in connection with this or any other Indebtedness of Borrower to Lender. This Guaranty represents the complete and integrated understanding between Guarantor and Lender regarding the terms hereof.

**25. WAIVER OF JURY TRIAL.** LENDER AND GUARANTOR HEREBY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY CIVIL ACTION ARISING OUT OF, OR BASED UPON, THIS GUARANTY.

**26. ADDITIONAL TERMS:**

MAST209B © John H. Harland Co. (4/7/00) (800) 937-3799



# COMMERCIAL SECURITY AGREEMENT

**THE UNIVERSITY NATIONAL BANK**
1400 KASOLD DRIVE, PO BOX 1777
LAWRENCE, KS 66044
(785) 841-1988    "LENDER"

| BORROWER | OWNER |
|---|---|
| WEBSTER'S, INC. | WEBSTER'S, INC. |
| **ADDRESS**<br>801 NORTH SECOND STREET<br>LAWRENCE, KS  66044<br>**TELEPHONE NO.**  **IDENTIFICATION NO.**<br>(785) 842-7700            5176 | **ADDRESS**<br>801 NORTH SECOND STREET<br>LAWRENCE, KS  66044<br>**TELEPHONE NO.**  **IDENTIFICATION NO.**<br>(785) 842-7700            5176 |

**1. SECURITY INTEREST.** For good and valuable consideration, Owner grants to Lender identified above a continuing security interest in the Collateral described below to secure the Obligations described in this Agreement.

**2. OBLIGATIONS.** The collateral shall secure the payment and performance of all of Borrower's and Owner's present and future, joint and/or several, direct and indirect, absolute and contingent, express and implied indebtedness to Lender under any promissory note or agreement described below, including all future advances made by Lender to Borrower or Owner and expenditures incurred by Lender upon the occurrence of an Event of Default (collectively "Obligations"):

a. this Agreement and/or the following promissory notes and agreements:

| INTEREST RATE | PRINCIPAL AMOUNT/ CREDIT LIMIT | FUNDING/ AGREEMENT DATE | MATURITY DATE | CUSTOMER NUMBER | LOAN NUMBER |
|---|---|---|---|---|---|
| 6.000% | $500,000.00 | 09/24/03 | 09/24/04 | 5176 | 12610 |
| | | | | | |

b. ☒ all other presently existing or future, evidences of indebtedness, obligations, agreements, instruments, guaranties or otherwise of Borrower or Owner to Lender (whether incurred for the same or different purposes than the foregoing); and
c. all renewals, extensions, amendments, modifications, replacements or substitutions to any of the foregoing.

**3. COLLATERAL.** All of Owner's right, title and interest in the following described property, as defined by the Uniform Commercial Code presently or as hereafter amended or replaced, whether now or hereafter existing or now owned or hereafter acquired by Owner and wherever located shall constitute the "Collateral":

☒ All accounts including, but not limited to, any accounts described on Schedule A attached hereto and incorporated herein by this reference;

☒ All chattel paper including, but not limited to, any chattel paper described on Schedule A attached hereto and incorporated herein by this reference;

☒ All deposit accounts including, but not limited to, any deposit accounts described on Schedule A attached hereto and incorporated herein by this reference;

☒ All documents including, but not limited to, any documents described on Schedule A attached hereto and incorporated herein by this reference;

☒ All equipment, including, but not limited to, any equipment described on Schedule A attached hereto and incorporated herein by this reference;

☒ All fixtures, including, but not limited to, any fixtures described on Schedule A and located or to be located on the real property described on Schedule B attached hereto and incorporated herein by this reference;

☒ All general intangibles including, but not limited to, any general intangibles described on Schedule A attached hereto and incorporated herein by this reference;

☒ All instruments including, but not limited to, any instruments described on Schedule A attached hereto and incorporated herein by this reference;

☒ All inventory including, but not limited to, any inventory described on Schedule A attached hereto and incorporated herein by this reference;

☐ All investment property including, but not limited to, any investment property described on Schedule A attached hereto and incorporated herein by this reference;

☐ All letter-of-credit rights including, but not limited to, any letter-of-credit rights described on Schedule A attached hereto and incorporated herein by this reference;

☐ All as-extracted collateral including, but not limited to, all minerals or the like and accounts resulting from sales at the wellhead or minehead located on or related to the real property described on Schedule B attached hereto and incorporated herein by this reference;

☐ All standing timber which is to be cut and removed under a conveyance or contract for sale located on the real property described on Schedule B attached hereto and incorporated herein by this reference;

☒ Other: ALL MANUFACTURED HOMES ON FLOOR PLAN

All monies, instruments, and savings, checking, share or other accounts of Owner (excluding IRA, Keogh, trust accounts, and other accounts subject to tax penalties if so assigned) that are now or in the future in Lender's custody or control;
All monies or instruments pertaining to the Collateral described above;
All accessions, accessories, additions, amendments, attachments, modifications, replacements and substitutions to any of the above;
All proceeds and products of any of the above; and
All supporting obligations of the above.

MAST206 © Harland Financial Solutions, Inc.

EXHIBIT E

**4. OWNER'S TAXPAYER IDENTIFIC** ~~...~~ Owner's social security number or federal ~~...~~ er identification number is: ~~_____5176_____~~

**5. OWNER'S LOCATION.** ☐ Owner is an individual and maintains his or her principal residence in the state of:_____
_____. ☒ Owner is a **Corporation** _____ duly incorporated, registered, formed or organized, validly existing and in good standing under the laws of the state of: **Kansas** _____. ☐ Owner is a _____ and maintains its principal place of business or, if it has more than one place of business, its chief executive office in the state of _____.

**6. REPRESENTATIONS, WARRANTIES, AND COVENANTS.** Owner represents, warrants and covenants to Lender that:

(a) Owner is and shall remain the sole owner of the Collateral;

(b) Neither Owner, nor, to the best of Owner's knowledge, has any other party used, generated, released, discharged, stored, or disposed of any hazardous waste, toxic substance, or related material (collectively "Hazardous Materials") or transported any Hazardous Materials across the property except as allowed by and in accordance with applicable federal, state and local law and regulation. Owner shall not commit or permit such actions to be taken in the future. The term "Hazardous Materials" shall mean any substance, material, or waste which is or becomes regulated by any governmental authority including, but not limited to, (i) petroleum; (ii) asbestos; (iii) polychlorinated biphenyls; (iv) those substances, materials or wastes designated as a "hazardous substance" pursuant to Section 311 of the Clean Water Act or listed pursuant to Section 307 of the Clean Water Act or any amendments or replacements to these statutes; (v) those substances, materials or wastes defined as a "hazardous waste" pursuant to Section 1004 of the Resource Conservation and Recovery Act or any amendments or replacements to that statute; or (vi) those substances, materials or wastes defined as a "hazardous substance" pursuant to Section 101 of the Comprehensive Environmental Response, Compensation and Liability Act, or any amendments or replacements to that statute. Owner is in compliance in all respects with all applicable federal, state and local laws and regulations, including, without limitation, those relating to "Hazardous Materials", as defined herein, and other environmental matters (the "Environmental Laws") and neither the federal government nor any other governmental or quasi governmental entity has filed a lien on the Collateral, nor are there any pending or threatened governmental, judicial or administrative actions with respect to environmental matters, which involve the Collateral;

(c) Owner's location (Owner's place of organization, principal place of business, or if more than one place of business, chief executive office, or principal residence) is in the state indicated in paragraph 5. Owner shall not change its state of location without first notifying Lender in writing;

(d) The Collateral is located and has been located during the four (4) month period prior to the date hereof, at Owner's address described above or any address described on Schedule C attached hereto and incorporated herein by this reference. Owner shall immediately advise Lender in writing of any change in or addition to the foregoing addresses;

(e) Owner shall not become a party to any restructuring of its form of business or participate in any consolidation, merger, liquidation or dissolution without Lender's prior written consent;

(f) Owner's exact legal name is as set forth on the first page of this Agreement. Owner shall not change such name or use any trade name without Lender's prior written consent and shall notify Lender of the nature of any intended change of Owner's name, or the use of any trade name, and the proposed effective date of such change;

(g) The Collateral is and shall at all times remain free of all tax and other liens, security interests, encumbrances and claims of any kind except for those belonging to Lender and those described on Schedule D attached hereto and incorporated herein by this reference. Without waiving the Event of Default as a result thereof, Owner shall take any action and execute any document needed to discharge any liens, security interests, encumbrances and claims not described on Schedule D;

(h) Owner shall defend the Collateral against all claims and demands of all persons at any time claiming any interest therein;

(i) Owner will cooperate with Lender in obtaining and maintaining control with respect to all deposit accounts, investment property, letter-of-credit rights and electronic chattel paper constituting the Collateral;

(j) Owner shall provide Lender with possession, as appropriate, of all chattel paper, documents, instruments and investment property constituting the Collateral, and Owner shall promptly mark all chattel paper, documents, instruments and investment property constituting the Collateral to show that the same are subject to Lender's security interest;

(k) All of Owner's accounts; chattel paper; deposit accounts; documents; general intangibles; instruments; investment property; letter-of-credit rights; and federal, state, county, and municipal government and other permits and licenses; trusts, liens, contracts, leases, and agreements constituting the Collateral are and shall be valid, genuine and legally enforceable obligations and rights belonging to Owner against one or more third parties and not subject to any claim, defense, set-off or counterclaim of any kind;

(l) Owner shall not amend, modify, replace, or substitute any account; chattel paper; deposit account; document; general intangible; instrument; investment property; or letter-of-credit right constituting the Collateral without the prior written consent of Lender. Owner shall not create any chattel paper constituting the Collateral without placing a legend on the chattel paper acceptable to Lender indicating that Lender has a security interest in the chattel paper;

(m) No person shall file an amendment that is a termination statement for a financing statement concerning any of the Collateral without the prior written consent of Lender, except to the extent permitted by the Uniform Commercial Code presently or as hereafter amended or replaced;

(n) Owner has the right and is duly authorized to enter into and perform its obligations under this Agreement. Owner's execution and performance of these obligations do not and shall not conflict with the provisions of any statute, regulation, ordinance, rule of law, contract or other agreement which may now or hereafter be binding on Owner;

(o) No action or proceeding is pending against Owner which might result in any material or adverse change in its business operations or financial condition or materially affect the Collateral;

(p) Owner has not violated and shall not violate any applicable federal, state, county or municipal statute, regulation or ordinance (including but not limited to those governing Hazardous Materials) which may materially and adversely affect its business operations or financial condition or the Collateral;

(q) Owner shall, upon Lender's request, deposit all proceeds of the Collateral into an account or accounts maintained by Owner or Lender at Lender's institution;

(r) Owner will, upon receipt, deliver to Lender as additional Collateral all securities distributed on account of the Collateral such as stock dividends and securities resulting from stock splits, reorganizations and recapitalizations;

(s) Owner agrees to the terms of the Obligations and to the terms of any renewals, extensions, amendments, modifications, replacements or substitutions of the Obligations; Lender may enter into agreements in the future with Borrower which, if this Agreement so provides, will become the Obligations secured by the Collateral described in this Agreement; property other than the Collateral may also secure the Obligations, that Lender shall have no obligation to exercise its rights against such property prior to exercising its rights against the Collateral, that Lender may accept substitutions or exchanges for any such property, and that Lender may release its security interest in such property at any time; parties other than Borrower may be or may become obligated under the Obligations; and

(t) This Agreement and the obligations described in this Agreement are executed and incurred for business and not consumer purposes.

**7. SALE OF COLLATERAL.** Owner shall not assign, convey, lease, sell, license, exchange or transfer any of the Collateral to any third party without the prior written consent of Lender except for sales of inventory to buyers in the ordinary course of business.

**8. FINANCING STATEMENTS AND OTHER DOCUMENTS.** Owner shall at any time and from time to time take all actions and execute all documents required by Lender to attach, perfect and maintain Lender's security interest in the Collateral and establish and maintain Lender's right to receive the payment of the proceeds of the Collateral including, but not limited to, executing any financing statements, fixture filings, continuation statements, notices of security interest and other documents required by the Uniform Commercial Code, presently or as hereafter amended or replaced, and other applicable law. Owner shall pay the costs of filing such documents in all offices wherever filing or recording is deemed by Lender to be necessary or desirable. Lender shall be entitled to perfect its security interest in the Collateral by filing carbon, photographic or other reproductions of this Agreement and/or the aforementioned documents with any authority required by the Uniform Commercial Code, presently or as hereafter amended or replaced, or other applicable law. Owner authorizes Lender to execute and file any financing statements, as well as extensions, renewals and amendments of financing statements in such form as Lender may require to perfect and maintain perfection of any security interest granted in this Agreement.

**9. INQUIRIES AND NOTIFICATION TO THIRD PARTIES.** Owner hereby authorizes Lender to contact any third party and make any inquiry pertaining to Owner's financial condition or the Collateral. In addition, Lender is authorized to provide oral or written notice of its security interest in the Collateral to any third party.

**10. LOCK BOX, COLLATERAL ACCOUNT.** If Lender so requests at any time (whether or not Owner is in default of this Agreement), Owner will direct each of its account debtors to make payments due under the relevant account or chattel paper directly to a special lock box to be under the control of Lender. Owner hereby authorizes and directs Lender to deposit into a special collateral account to be established and maintained with Lender all checks, drafts and cash payments received in the lock box. All deposits in the collateral account shall constitute proceeds of Collateral and shall not constitute payment of any Obligation. At its option, Lender may, at any time, apply finally collected funds on deposit in the collateral account to the payment of the Obligations in such order of application as Lender may determine, or permit Owner to withdraw all or any part of the balance on deposit in the collateral account. If a collateral account is so established, Owner agrees that Owner will promptly deliver to Lender, for deposit into the collateral account, all payments on accounts and chattel paper received by Owner. All such payments shall be delivered to Lender in the form received (except for Owner's endorsement if necessary). Until so deposited, all payments on accounts and chattel paper received by Owner shall be held in trust by Owner for and as the property of Lender and shall not be commingled with any funds or property of Owner.

**11. COLLECTION OF INDEBTEDNESS F~~OM~~ ~~T~~HIRD PARTIES.** Lender shall be entitled t~~o~~ ~~_____~~ and upon the request of Lender, Owner shall notify any account debtor or other third party (including, but not limited to, insurance comp~~a~~...es) to pay any indebtedness or obligation owing to Owner and constituting the Collateral (collectively "Indebtedness") to Lender whether or not a default exists under this Agreement. Owner shall diligently collect the Indebtedness owing to Owner from its account debtors and other third parties until the giving of such notification. In the event that Owner possesses or receives possession of any instruments or other remittances with respect to the Indebtedness following the giving of such notification or if the instruments or other remittances constitute the prepayment of any Indebtedness or the payment of any insurance proceeds, Owner shall hold such instruments and other remittances in trust for Lender apart from its other property, endorse the instruments and other remittances to Lender, and immediately provide Lender with possession of the instruments and other remittances. Lender shall be entitled, but not required, to collect (by legal proceedings or otherwise), extend the time for payment, compromise, exchange or release any obligor or collateral, or otherwise settle any of the Indebtedness whether or not an event of default exists under this Agreement. Lender shall not be liable to Owner for any action, error, mistake, omission or delay pertaining to the actions described in this paragraph or any damages resulting therefrom.

**12. POWER OF ATTORNEY.** Owner hereby appoints Lender as its attorney-in-fact to endorse Owner's name on all instruments and other remittances payable to Owner with respect to the Indebtedness, including any items received by Lender in any lockbox account, or other documents pertaining to Lender's actions in connection with the Indebtedness. In addition, Lender shall be entitled, but not required, to perform any action or execute any document required to be taken or executed by Owner under this Agreement. Lender's performance of such action or execution of such documents shall not relieve Owner from any obligation or cure any default under this Agreement. The powers of attorney described in this paragraph are coupled with an interest and are irrevocable.

**13. USE AND MAINTENANCE OF COLLATERAL.** Owner shall use the Collateral solely in the ordinary course of its business, for the usual purposes intended by the manufacturer (if applicable), with due care, and in compliance with the laws, ordinances, regulations, requirements and rules of all federal, state, county and municipal authorities including environmental laws and regulations and insurance policies. Owner shall not make any alterations, additions or improvements to the Collateral without the prior written consent of Lender. Owner shall ensure that Collateral which is not now a fixture does not become a fixture. Without limiting the foregoing, all alterations, additions and improvements made to the Collateral shall be subject to the security interest belonging to Lender, shall not be removed without the prior written consent of Lender, and shall be made at Owner's sole expense. Owner shall take all actions and make any repairs or replacements needed to maintain the Collateral in good condition and working order.

**14. LOSS OR DAMAGE.** Owner shall bear the entire risk of any loss, theft, destruction or damage (collectively "Loss or Damage") to all or any part of the Collateral. In the event of any Loss or Damage, Owner will either restore the Collateral to its previous condition, replace the Collateral with similar property acceptable to Lender in its sole discretion, or pay or cause to be paid to Lender the decrease in the fair market value of the affected Collateral. Lender has no duty to collect any income accruing on the Collateral or to preserve any rights relating to the Collateral.

**15. INSURANCE.** The Collateral will be kept insured for its full value against all hazards including loss or damage caused by fire, collision, theft or other casualty. If the Collateral is a motor vehicle, Owner will obtain comprehensive and collision coverage in amounts at least equal to the actual cash value of the vehicle with deductibles not to exceed $ __n/a__ . Insurance coverage obtained by Owner shall be from a licensed insurer subject to Lender's approval. Owner shall assign to Lender all rights to receive proceeds of insurance not exceeding the amount owed under the Obligations described above, and direct the insurer to pay all proceeds directly to Lender. The insurance policies shall require the insurance company to provide Lender with at least __n/a__ days' written notice before such policies are altered or cancelled in any manner. The insurance policies shall name Lender as a loss payee and provide that no act or omission of Owner or any other person shall affect the right of Lender to be paid the insurance proceeds pertaining to the loss or damage of the Collateral. In the event Owner fails to acquire or maintain insurance, Lender (after providing notice as may be required by law) may in its discretion procure appropriate insurance coverage upon the Collateral and charge the insurance cost as an advance of principal under the promissory note. Owner shall furnish Lender with evidence of insurance indicating the required coverage. Lender may act as attorney-in-fact for Owner in making and settling claims under insurance policies, cancelling any policy or endorsing Owner's name on any draft or negotiable instrument drawn by any insurer.

**16. INDEMNIFICATION.** Lender shall not assume or be responsible for the performance of any of Owner's obligations with respect to the Collateral under any circumstances. Owner shall immediately provide Lender with written notice of and indemnify and holds Lender and its shareholders, directors, officers, employees and agents harmless from all claims, damages, liabilities (including attorneys' fees and legal expenses), causes of action, actions, suits and other legal proceedings (collectively "Claims") pertaining to its business operations or the Collateral including, but not limited to, those arising from Lender's performance of Owner's obligations with respect to the Collateral or claims involving Hazardous Materials. Owner, upon the request of Lender, shall hire legal counsel to defend Lender from such Claims, and pay the attorneys' fees, legal expenses and other costs to the extent permitted by applicable law, incurred in connection therewith. In the alternative, Lender shall be entitled to employ its own legal counsel to defend such Claims at Owner's cost.

**17. TAXES AND ASSESSMENTS.** Owner shall execute and file all tax returns and pay all taxes, licenses, fees and assessments relating to its business operations and the Collateral (including, but not limited to, income taxes, personal property taxes, withholding taxes, sales taxes, use taxes, excise taxes and workers' compensation premiums) in a timely manner.

**18. INSPECTION OF COLLATERAL AND BOOKS AND RECORDS.** Owner shall allow Lender or its agents to examine, inspect and make abstracts and copies of the Collateral and Owner's books and records pertaining to Owner's business operations and financial condition or the Collateral during normal business hours. Owner shall provide any assistance required by Lender for these purposes. All of the signatures and information pertaining to the Collateral or contained in the books and records shall be genuine, true, accurate and complete in all respects. Owner shall note the existence of Lender's security interest in its books and records pertaining to the Collateral.

**19. EVENTS OF DEFAULT.** An Event of Default will occur under this Agreement in the event that Owner, Borrower or any guarantor:
  (a) fails to make any payment under this Agreement or any other indebtedness to Lender when due;
  (b) fails to perform any obligation or breaches any warranty or covenant to Lender contained in this Agreement or any other present or future written agreement regarding this or any other indebtedness to Lender;
  (c) provides or causes any false or misleading signature or representation to be provided to Lender;
  (d) sells, conveys, or transfers rights in any Collateral without the written approval of Lender; destroys, loses or damages such Collateral in any material respect; or subjects such Collateral to seizure, confiscation, or condemnation;
  (e) seeks to revoke, terminate or otherwise limit its liability under any continuing guaranty;
  (f) has a garnishment, judgment, tax levy, attachment or lien entered or served against Owner, Borrower, or any guarantor, or any of their property including the Collateral;
  (g) dies, becomes legally incompetent, is dissolved or terminated, ceases to operate its business, becomes insolvent, makes an assignment for the benefit of creditors, fails to pay any debts as they become due, or becomes the subject of any bankruptcy, insolvency or debtor rehabilitation proceeding;
  (h) allows the Collateral to be used by anyone to transport or store goods, the possession, transportation, or use of which, is illegal;
  (i) fails to provide Lender evidence of satisfactory financial condition;
  (j) has a majority of its outstanding voting securities sold, transferred or conveyed to any person or entity other than any person or entity that has the majority ownership as of the date of the execution of this Agreement; or
  (k) causes Lender to deem itself insecure due to a significant decline in the value of any of the Collateral or Lender, in good faith, believes the prospect of payment or performance is impaired.

**20. RIGHTS OF LENDER ON EVENT OF DEFAULT.** Upon the occurrence of an Event of Default under this Agreement, Lender shall be entitled to exercise one or more of the following remedies without notice or demand (except as required by law):
  (a) to declare the Obligations immediately due and payable in full, such acceleration shall be automatic and immediate if the Event of Default is a filing under the Bankruptcy Code;
  (b) to collect the outstanding Obligations with or without resorting to judicial process;
  (c) to change Owner's mailing address, open Owner's mail, and retain any instruments or other remittances constituting the Collateral contained therein;
  (d) to take possession of any Collateral in any manner permitted by law;
  (e) to apply for and obtain, without notice and upon ex parte application, the appointment of a receiver for the Collateral without regard to Owner's financial condition or solvency, the adequacy of the Collateral to secure the payment or performance of the obligations, or the existence of any waste to the Collateral;
  (f) to require Owner to deliver and make available to Lender any Collateral at a place reasonably convenient to Owner and Lender;
  (g) to sell, lease or otherwise dispose of any Collateral and collect any deficiency balance with or without resorting to legal process;
  (h) to set-off Owner's obligations against any amounts due to Owner including, but not limited to, monies, instruments, and deposit accounts maintained with Lender; and
  (i) to exercise all other rights available to Lender under any other written agreement or applicable law.

Lender's rights are cumulative and may be exercised together, separately, and in any order. Unless the Collateral is perishable, threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will provide reasonable notification of the time and place of any sale or intended disposition as required under the Uniform Commercial Code, presently or as hereafter amended or replaced. Lender has no obligation to clean up or otherwise prepare the Collateral for sale. Lender may comply with any applicable state or federal law requirements in connection with a disposition of the Collateral and compliance will not be considered adversely to affect the commercial reasonableness of any sale of the Collateral. If the Collateral consists of securities, Lender shall be entitled to transfer the securities into the name of Lender or its designee and to vote the securities. Lender shall be authorized to notify the issuer of the securities to remit any related dividends, interest and securities resulting from stock splits, reorganizations and capitalizations directly to Lender or its designee. In the event that Lender institutes an action to recover any Collateral or seeks recovery of any Collateral by way of a prejudgment remedy in an action against Owner, Owner waives the posting of any bond which might otherwise be required. Upon default, Owner shall segregate all proceeds of Collateral and hold such proceeds in trust for Lender. Lender's remedies under this paragraph are in addition to those available at common law, such as setoff.

MAST206C © Harland Financial Solutions, Inc. (4/23/01) (800) 937-3799

Page 3 of 5

**21. APPLICATION OF PAYMENTS.** [ ... ] or not a default has occurred under this . . . . [ ]ent, all payments made by or on behalf of Owner and all credits due to Owner from the disposition of the Collateral or otherwise may be applied against the amounts paid by Lender (including attorneys' fees and legal expenses) in connection with the exercise of its rights or remedies described in this Agreement and any interest thereon and then to the payment of the remaining Obligations in whatever order Lender chooses.

**22. ADVANCES TO PERFORM COVENANTS.** Owner shall reimburse Lender for all amounts (including attorneys' fees and legal expenses) expended by Lender in the performance of any action required to be taken by Owner or the exercise of any right or remedy belonging to Lender under this Agreement, together with interest thereon at the lower of the highest rate described in any promissory note or credit agreement executed by Borrower or Owner or the highest rate allowed by law from the date of payment until the date of reimbursement. These sums shall be included in the definition of Obligations, shall be secured by the Collateral identified in this Agreement and shall be payable upon demand. Lender has no duty to take any action to protect the value of the Collateral or to exercise any rights of the Owner with respect to the Collateral.

**23. ASSIGNMENT.** Owner shall not be entitled to assign any of its rights, remedies or obligations described in this Agreement without the prior written consent of Lender. Consent may be withheld by Lender in its sole discretion. Lender shall be entitled to assign some or all of its rights and remedies described in this Agreement without notice to or the prior consent of Owner in any manner.

**24. MODIFICATION AND WAIVER.** The modification or waiver of any of Owner's Obligations or Lender's rights under this Agreement must be contained in a writing signed by Lender. Lender may perform any of Owner's Obligations or delay or fail to exercise any of its rights without causing a waiver of those Obligations or rights. A waiver on one occasion shall not constitute a waiver on any other occasion. Owner's Obligations under this Agreement shall not be affected if Lender amends, compromises, exchanges, fails to exercise, impairs or releases any of the obligations belonging to any Owner or third party or any of its rights against any Owner, third party, Collateral or any other property securing the Obligations. Owner waives any right it may have to require Lender to pursue any third person for any of the Obligations.

**25. SUCCESSORS AND ASSIGNS.** This Agreement shall be binding upon and inure to the benefit of Owner and Lender and their respective successors, assigns, trustees, receivers, administrators, personal representatives, legatees, and devisees.

**26. NOTICES.** Any notice or other communication to be provided under this Agreement shall be in writing and sent to the parties at the addresses described in this Agreement or such other address as the parties may designate in writing from time to time.

**27. SEVERABILITY.** If any provision of this Agreement violates the law or is unenforceable, the rest of the Agreement shall remain valid.

**28. APPLICABLE LAW.** This Agreement shall be governed by the laws of the state of ___Kansas___, except to the extent that the Uniform Commercial Code, presently or as hereafter amended or replaced, provides for the application of the law of the state of Owner's location, as indicated in paragraph 5. Unless applicable law provides otherwise, Owner consents to the jurisdiction and venue of any court located in such state selected by Lender in the event of any legal proceeding under this Agreement.

**29. COLLECTION COSTS.** To the extent permitted by law, Owner agrees to pay Lender's reasonable fees and costs of attorneys and other agents (including without limitation paralegals, clerks and consultants), whether or not such attorney or agent is an employee of Lender, which are incurred by Lender in collecting any amount due or enforcing any right or remedy under this Agreement, whether or not suit is brought, and including, but not limited to, all fees and costs incurred on appeal, in bankruptcy, and for post-judgment collection actions.

**30. MISCELLANEOUS.** This Agreement is executed for commercial purposes. Owner shall supply information regarding Owner's business operations and financial condition or the Collateral in the form and manner as requested by Lender from time to time. All information furnished by Owner to Lender shall be true, accurate and complete in all respects. Owner and Lender agree that time is of the essence. Owner waives presentment, demand for payment, notice of dishonor and protest except as required by law. All references to Owner in this Agreement shall include all parties signing below except Lender. This Agreement shall be binding upon the heirs, successors and assigns of Owner and Lender. If there is more than one Owner, their obligations under this Agreement shall be joint and several. This Agreement shall remain in full force and effect until Lender provides Owner with written notice of termination. This Agreement represents the complete and integrated understanding between Owner and Lender regarding the terms hereof.

**31. WAIVER OF JURY TRIAL.** LENDER AND OWNER HEREBY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY CIVIL ACTION ARISING OUT OF, OR BASED UPON, THIS SECURITY AGREEMENT.

**32. ADDITIONAL TERMS:**

---

OWNER ACKNOWLEDGES THAT OWNER HAS READ, UNDERSTANDS, AND AGREES TO THE TERMS AND CONDITIONS OF THIS AGREEMENT. OWNER ACKNOWLEDGES RECEIPT OF AN EXACT COPY OF THIS AGREEMENT.

Dated: **September 24, 2003**

LENDER: **THE UNIVERSITY NATIONAL BANK**

By: _____
LESLIE J DREILING
EXEC. VICE - PRESIDENT

OWNER: **WEBSTER'S, INC.**

By: _____
GALEN L WEBER
PRESIDENT

OWNER: _____

OWNER: _____

OWNER: _____

OWNER: _____

OWNER: _____

OWNER: _____

**SCHEDULE A**

**SCHEDULE B**

Record Owner Name:

**SCHEDULE C**

**SCHEDULE D**

INSTRUCTIONS          UNIFORM COMMERCIAL CODE - FINANCING STATEMENT - FORM UCC-1

1. Please type this form. Fold only along perforation for mailing.
2. Remove Secured Party and Debtor copies and send other 3 copies with interleaved carbon paper to the filing officer, marked ATTENTION: UCC.
3. Enclose filing fee.
4. When filing is to be in more than one office, duplicate UCC-1 may be placed over this set to avoid double typing.
5. If the space provided for any item(s) on the form is inadequate, this item(s) should be continued on additional sheets, preferably 8" x 5".
6. When a copy of the security agreement is used as a financing statement, it is requested that it be accompanied by a completed but unsigned set of these forms.
7. At the time of original filing, filing officer should return third copy as an acknowledgement.

This FINANCING STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code:

| 1. Debtor(s) (Last Name first) and address(es) | 2. Secured Party(ies) (or assignee) and address(es) | For Filing Office (Date, Time, Number and Filing Office): |
|---|---|---|
| WEBSTER'S,INC.<br>GALEN L. WEBER<br>JEANETTE L. WEBER<br>801 NORTH SECOND STREET<br>LAWRENCE, KS 66044 | THE UNIVERSITY NATIONAL BANK<br>OF LAWRENCE<br>P.O. BOX 1777<br>1400 KASOLD<br>LAWRENCE, KS 66044   013584 | WEBSTER'S INC:4●●●●5176<br>WEBER,GALEN L.:5●●●●-3384<br>WEBER,JEANETTE L.:5●●●●-3885 |

3. A. This financing statement covers the following types (or items) of property: (Describe)

    SEE ATTACHMENT A

3. B. (If collateral is crops) The above described crops are growing or are to be grown on: (Describe real estate) _____

3. C. If applicable, the above (goods are to become fixtures on:) (timber is standing on:) (minerals or the like, including oil and gas, or accounts will be financed at the wellhead or minehead of the well or mine located on:) (Legal description of real estate) _____

    (Name of record owner) _____

4. Check [X] if products of Collateral are claimed   [X] Proceeds of Collateral are also covered.

FILED WITH:   STATE OF KANSAS

THE UNIVERSITY NATIONAL BANK OF LAWRENCE

By: _____
    Signature(s) of Debtor(s)

By: _S. Marshall_____
    Signature(s) of Secured Party(ies) (or assignee)

FORM UCC-1–KANSAS UNIFORM COMMERCIAL CODE

FILED SEC OF STATE
KANSAS
Aug 3 10 09 AM '95

2 1 6 1 5 8 8

UCC-1
# ATTACHMENT A

**Debtor's Name and Mailing Addre** : **WEBSTER'S INC.**
**GALEN L. WEBER**
**JEANETTE L. WEBER**
**801 NORTH SECOND STREET, LAWRENCE, KS 66044**

The Collateral shall consist of all of the following described property and Debtor's rights, title and interest in such property whether now owned or hereafter acquired by Debtor and wheresoever located:

[X] All accounts and contract rights including, but not limited to, any accounts and contract rights described on Schedule A below and incorporated herein by this reference;

[X] All chattel paper including, but not limited to, any chattel paper described on Schedule A below and incorporated herein by this reference;

[X] All documents including, but not limited to, any documents described on Schedule A below and incorporated herein by this reference;

[X] All equipment including, but not limited to, any equipment described on Schedule A below and incorporated herein by this reference;

[X] All fixtures including, but not limited to, any fixtures located or to be located on the real property described on Schedule B below and incorporated herein by this reference;

[X] All general intangibles including, but not limited to, any general intangibles described on Schedule A below and incorporated herein by this reference;

[X] All instruments including, but not limited to, any instruments described on Schedule A below and incorporated herein by this reference;

[X] All inventory including, but not limited to, any inventory described on Schedule A below and incorporated herein by this reference;

[ ] All minerals or the like located on or related to the real property described on Schedule B below and incorporated herein by this reference;

[ ] All standing timber located on the real property described on Schedule B below and incorporated herein by this reference;

[X] Other: ALL MANUFACTURED HOMES ON FLOOR PLAN

All monies, instruments, and savings, checking or other deposit accounts, that are now or in the future within Lender's custody or control excluding IRA, Keogh, and trust accounts and deposits subject to tax penalties if assigned;
All accessions, accessories, additions, amendments, attachments, modifications, replacements and substitutions to any of the above;
All proceeds and products of any of the above;
All policies of insurance pertaining to any of the above as well as any proceeds and unearned premiums pertaining to such policies; and
All books and records pertaining to any of the above.

### SCHEDULE A

### SCHEDULE B

LPUC1A Formation Technologies, Inc. (10/03/94) (800) 837-3799

RON THORNBURGH
Secretary of State



STATE OF KANSAS

First Floor, Memorial Hall
120 SW 10th Ave.
Topeka, KS 66612-1594
(785) 296-4564

May 3, 2000

UNIVERSITY NATIONAL BK
BOX 1777
LAWRENCE KS 66044

UCC 1 FILE #:    2161588 FILE DATE:  8/03/1995 LAPSE DATE:  8/03/2005
UCC 2 Continuation File #:         3559150    FILE DATE:   5/01/2000
Number of pages in this filing:    1

The following data reflects the information contained in the
uniform commercial code database.  Please compare this data to the
debtor and secured party information submitted on this filing.

If you would like for our records to reflect changes in either of
these fields, you must file an amendment.  The fee for an amendment
is $6.00 plus $1.00 for each additional page.

Secured Party
UNIVERSITY NATIONAL BK
BOX 1777
LAWRENCE KS 66044

Debtor
WEBSTERS INC
801 N SECOND ST
LAWRENCE KS 66044
FEIN/SSN:    █████5176

Debtor
WEBER GALEN L
801 N SECOND ST
LAWRENCE KS 66044
FEIN/SSN:    █████3384

Debtor
WEBER JEANETTE L
801 N SECOND ST
LAWRENCE KS 66044
FEIN/SSN:    █████3885

drh

Administration: (785) 296-0498      Web Site:          Elections: (785) 296-4561
FAX: (785) 368-8028                  www.kssos.org      FAX: (785) 291-6693
Corporations: (785) 296-4564        e-mail:            UCC: (785) 296-1849
FAX: (785) 296-4570                  kssos@kssos.org    FAX: (785) 296-3659

**Uniform Commercial Code—Statement of Continuation Release, Amendment, Etc.—Form UCC-2**

1. Type form. If space is inadequate continue on additional sheet. Enclose filing fee.
4. Filings in the Secretary of State's Office must contain either the debtor's federal employer identification number or social security number.
When the debtor is a sole proprietor, only the debtor's SSN is authorized to be filed.

Prepaid account number __013684__

| 1. Debtor (if individual, last name first) and address: | Debtor (if individual, last name first) and address: |
|---|---|
| WEBSTER'S, INC.          ████5176<br>GALEN L. WEBER        ████-3384<br>JEANETTE L. WEBER     ████-3885<br>801 NORTH SECOND STREET<br>LAWRENCE, KS 66044<br>FEIN                    or SSN | FEIN                    or SSN |

2. Secured Party and address (there may be more than one):
(Type Information inside gray area)

UNIVERSITY NATIONAL BANK
1400 KASOLD DRIVE
PO BOX 1777
LAWRENCE, KS 66044

For filing officer

3. Assignee and address *if applicable*

4. This statement refers to Original Financing Statement Number: __2161588__          Original filing date __08/03/95__     Filed with __SEC OF S__

5. [xx] **A. Continuation**  The original Financing Statement bearing the above file number is still effective.

[ ] **B. Termination**  The secured Party of record no longer claims a security interest under the Financing Statement bearing the above file number.

[ ] **C. Release**  From the Collateral described in the Financing Statement bearing the above file number, the Secured Party of record releases the collateral below.

[ ] **D. Assignment**  The Secured Party of record has assigned the Secured Party's rights in the property described below under the Financing Statement bearing the above file number to the Assignee whose name and address are shown above.

[ ] **E. Amendment**  The Financing Statement bearing the above file number is amended as set forth below

6. This area is for describing changes.

Number of Additional Sheets, if any. _____

THE UNIVERSITY NATIONAL BANK

Signature of Debtor(s)
(Necessary if any amendment changes the classification or the value of collateral)

Signature(s) of Secured Party (ies)
LESLIE J DREILING, EXEC. VICE PRESIDENT

Form UCC-2 Form approved by Kansas Secretary of State

Rev. 6-93



## Kansas Secretary of State
## Online UCC Filing System
## Acknowledgment of Filing

Time of Transaction: **05-13-2005 09:42:49 AM**
Filing Type: **Continuation**
Filing Number: **93528835**   Initial Filing Number: **2161588**

**Initial Filing:**

| Debtor Information |
|---|
| WEBSTERS INC<br>801 N SECOND ST<br>LAWRENCE, KS 66044 |
| WEBER, GALEN L<br>801 N SECOND ST<br>LAWRENCE, KS 66044 |
| WEBER, JEANETTE L<br>801 N SECOND ST<br>LAWRENCE, KS 66044 |
| **Secured Party Information** |
| UNIVERSITY NATIONAL BK<br>BOX 1777<br>LAWRENCE, KS 66044 |

**Amendment:**

| Authorizing Party Information |
|---|
| UNIVERSITY NATIONAL BK |
| **Collateral Information** |

Ron Thornburgh
Secretary of State

Back to Listing



# Kansas Secretary of State
# Online UCC Filing System
# Acknowledgment of Filing

Time of Transaction: **05-06-2010 09:58:19 AM**
Filing Type: **Continuation**
Filing Number: **97849518**   Initial Filing Number: **2161588**

**Initial Filing:**

| Debtor Information |
| --- |
| WEBSTERS INC<br>801 N SECOND ST<br>LAWRENCE, KS 66044 |
| WEBER, GALEN L<br>801 N SECOND ST<br>LAWRENCE, KS 66044 |
| WEBER, JEANETTE L<br>801 N SECOND ST<br>LAWRENCE, KS 66044 |
| **Secured Party Information** |
| UNIVERSITY NATIONAL BK<br>BOX 1777<br>LAWRENCE, KS 66044 |

**Amendment:**

| Authorizing Party Information |
| --- |
| UNIVERSITY NATIONAL BK |
| **Collateral Information** |

*Ron Thornburgh* (signature)

Ron Thornburgh
Secretary of State

Back to Listing



**THE** **University** **National** **Bank**

THE UNIVERSITY NATIONAL BANK
1400 KASOLD DRIVE, PO BOX 1777
LAWRENCE, KS 66044
(785) 841-1988   "LENDER"

# COMMERCIAL
# SECURITY
# AGREEMENT

| BORROWER | OWNER |
|---|---|
| WEBSTER'S, INC. | GALEN L WEBER |

| ADDRESS | ADDRESS |
|---|---|
| 801 NORTH SECOND STREET | 3308 RIVERVIEW ROAD |
| LAWRENCE, KS  66044 | LAWRENCE, KS  66049 |
| TELEPHONE NO.            IDENTIFICATION NO. | TELEPHONE NO.            IDENTIFICATION NO. |
| (785) 842-7700        5176 | (785) 749-4152        3384 |

**1. SECURITY INTEREST.** For good and valuable consideration, Owner grants to Lender identified above a continuing security interest in the Collateral described below to secure the Obligations described in this Agreement.

**2. OBLIGATIONS.** The collateral shall secure the payment and performance of all of Borrower's and Owner's present and future, joint and/or several, direct and indirect, absolute and contingent, express and implied indebtedness to Lender under any promissory note or agreement described below, including all future advances made by Lender to Borrower or Owner and expenditures incurred by Lender upon the occurrence of an Event of Default (collectively "Obligations"):

a. this Agreement and/or the following promissory notes and agreements:

| INTEREST RATE | PRINCIPAL AMOUNT/ CREDIT LIMIT | FUNDING/ AGREEMENT DATE | MATURITY DATE | CUSTOMER NUMBER | LOAN NUMBER |
|---|---|---|---|---|---|
| 6.000% | $75,000.00 | 09/24/03 | 09/24/04 | 5176 | 12621 |

b. ☒ all other presently existing or future, evidences of indebtedness, obligations, agreements, instruments, guaranties or otherwise of Borrower or Owner to Lender (whether incurred for the same or different purposes than the foregoing); and
c. all renewals, extensions, amendments, modifications, replacements or substitutions to any of the foregoing.

**3. COLLATERAL.** All of Owner's right, title and interest in the following described property, as defined by the Uniform Commercial Code presently or as hereafter amended or replaced, whether now or hereafter existing or now owned or hereafter acquired by Owner and wherever located shall constitute the "Collateral":

☐ All accounts including, but not limited to, any accounts described on Schedule A attached hereto and incorporated herein by this reference;

☐ All chattel paper including, but not limited to, any chattel paper described on Schedule A attached hereto and incorporated herein by this reference;

☐ All deposit accounts including, but not limited to, any deposit accounts described on Schedule A attached hereto and incorporated herein by this reference;

☐ All documents including, but not limited to, any documents described on Schedule A attached hereto and incorporated herein by this reference;

☐ All equipment, including, but not limited to, any equipment described on Schedule A attached hereto and incorporated herein by this reference;

☐ All fixtures, including, but not limited to, any fixtures described on Schedule A and located or to be located on the real property described on Schedule B attached hereto and incorporated herein by this reference;

☐ All general intangibles including, but not limited to, any general intangibles described on Schedule A attached hereto and incorporated herein by this reference;

☐ All instruments including, but not limited to, any instruments described on Schedule A attached hereto and incorporated herein by this reference;

☐ All inventory including, but not limited to, any inventory described on Schedule A attached hereto and incorporated herein by this reference;

☒ All investment property including, but not limited to, any investment property described on Schedule A attached hereto and incorporated herein by this reference;

☐ All letter-of-credit rights including, but not limited to, any letter-of-credit rights described on Schedule A attached hereto and incorporated herein by this reference;

☐ All as-extracted collateral including, but not limited to, all minerals or the like and accounts resulting from sales at the wellhead or minehead located on or related to the real property described on Schedule B attached hereto and incorporated herein by this reference;

☐ All standing timber which is to be cut and removed under a conveyance or contract for sale located on the real property described on Schedule B attached hereto and incorporated herein by this reference;

☐ Other:

**The property described on Schedule A;**

All monies, instruments, and savings, checking, share or other accounts of Owner (excluding IRA, Keogh, trust accounts, and other accounts subject to tax penalties if so assigned) that are now or in the future in Lender's custody or control;
All monies or instruments pertaining to the Collateral described above;
All accessions, accessories, additions, amendments, attachments, modifications, replacements and substitutions to any of the above;
All proceeds and products of any of the above; and
All supporting obligations of the above.

EXHIBIT G

**4. OWNER'S TAXPAYER IDENTIFICA~~~** Owner's social security number or federal t~~~ identification number is: ~~~3384.

**5. OWNER'S LOCATION.** [X] Owner is an individual and maintains his or her principal residence in the state of: **Kansas**_____. [ ] Owner is a _____ duly incorporated, registered, formed or organized, validly existing and in good standing under the laws of the state of: _____. [ ] Owner is a _____ and maintains its principal place of business or, if it has more than one place of business, its chief executive office in the state of _____.

**6. REPRESENTATIONS, WARRANTIES, AND COVENANTS.** Owner represents, warrants and covenants to Lender that:

(a) Owner is and shall remain the sole owner of the Collateral;

(b) Neither Owner, nor, to the best of Owner's knowledge, has any other party used, generated, released, discharged, stored, or disposed of any hazardous waste, toxic substance, or related material (collectively "Hazardous Materials") or transported any Hazardous Materials across the property except as allowed by and in accordance with applicable federal, state and local law and regulation. Owner shall not commit or permit such actions to be taken in the future. The term "Hazardous Materials" shall mean any substance, material, or waste which is or becomes regulated by any governmental authority including, but not limited to, (i) petroleum; (ii) asbestos; (iii) polychlorinated biphenyls; (iv) those substances, materials or wastes designated as a "hazardous substance" pursuant to Section 311 of the Clean Water Act or listed pursuant to Section 307 of the Clean Water Act or any amendments or replacements to these statutes; (v) those substances, materials or wastes defined as a "hazardous waste" pursuant to Section 1004 of the Resource Conservation and Recovery Act or any amendments or replacements to that statute; or (vi) those substances, materials or wastes defined as a "hazardous substance" pursuant to Section 101 of the Comprehensive Environmental Response, Compensation and Liability Act, or any amendments or replacements to that statute. Owner is in compliance in all respects with all applicable federal, state and local laws and regulations, including, without limitation, those relating to "Hazardous Materials", as defined herein, and other environmental matters (the "Environmental Laws") and neither the federal government nor any other governmental or quasi governmental entity has filed a lien on the Collateral, nor are there any pending or threatened governmental, judicial or administrative actions with respect to environmental matters, which involve the Collateral;

(c) Owner's location (Owner's place of organization, principal place of business, or if more than one place of business, chief executive office, or principal residence) is in the state indicated in paragraph 5. Owner shall not change its state of location without first notifying Lender in writing.

(d) The Collateral is located and has been located during the four (4) month period prior to the date hereof, at Owner's address described above or any address described on Schedule C attached hereto and incorporated herein by this reference. Owner shall immediately advise Lender in writing of any change in or addition to the foregoing addresses;

(e) Owner shall not become a party to any restructuring of its form of business or participate in any consolidation, merger, liquidation or dissolution without Lender's prior written consent;

(f) Owner's exact legal name is as set forth on the first page of this Agreement. Owner shall not change such name or use any trade name without Lender's prior written consent and shall notify Lender of the nature of any intended change of Owner's name, or the use of any trade name, and the proposed effective date of such change;

(g) The Collateral is and shall at all times remain free of all tax and other liens, security interests, encumbrances and claims of any kind except for those belonging to Lender and those described on Schedule D attached hereto and incorporated herein by this reference. Without waiving the Event of Default as a result thereof, Owner shall take any action and execute any document needed to discharge any liens, security interests, encumbrances and claims not described on Schedule D;

(h) Owner shall defend the Collateral against all claims and demands of all persons at any time claiming any interest therein;

(i) Owner will cooperate with Lender in obtaining and maintaining control with respect to all deposit accounts, investment property, letter-of-credit rights and electronic chattel paper constituting the Collateral;

(j) Owner shall provide Lender with possession, as appropriate, of all chattel paper, documents, instruments and investment property constituting the Collateral, and Owner shall promptly mark all chattel paper, instruments, documents and investment property constituting the Collateral to show that the same are subject to Lender's security interest;

(k) All of Owner's accounts; chattel paper; deposit accounts; documents; general intangibles; instruments; investment property; letter-of-credit rights; and federal, state, county, and municipal government and other permits and licenses; trusts, liens, contracts, leases, and agreements constituting the Collateral are and shall be subject to Lender's security interest in its entirety and are free and clear of any claim, defense, set-off or counterclaim of any kind; belonging to Owner against one or more third parties and not subject to any claim, defense, set-off or counterclaim of any kind;

(l) Owner shall not amend, modify, replace, or substitute any account; chattel paper; deposit account; document; general intangible; instrument; investment property; or letter-of-creditright constituting the Collateral without the prior written consent of Lender. Owner shall not create any chattel paper constituting the Collateral without placing a legend on the chattel paper acceptable to Lender indicating that Lender has a security interest in the chattel paper;

(m) No person shall file an amendment that is a termination statement for a financing statement concerning any of the Collateral without the prior written consent of Lender, except to the extent permitted by the Uniform Commercial Code presently or as hereafter amended or replaced;

(n) Owner has the right and is duly authorized to enter into and perform its obligations under this Agreement. Owner's execution and performance of these obligations do not and shall not conflict with the provisions of any statute, regulation, ordinance, rule of law, contract or other agreement which may now or hereafter be binding on Owner;

(o) No action or proceeding is pending against Owner which might result in any material or adverse change in its business operations or financial condition or materially affect the Collateral;

(p) Owner has not violated and shall not violate any applicable federal, state, county or municipal statute, regulation or ordinance (including, but not limited to those governing Hazardous Materials) which may materially and adversely affect its business operations or financial condition or the Collateral;

(q) Owner shall, upon Lender's request, deposit all proceeds of the Collateral into an account or accounts maintained by Owner or Lender at Lender's institution;

(r) Owner will, upon receipt, deliver to Lender as additional Collateral all securities distributed on account of the Collateral such as stock dividends and securities resulting from stock splits, reorganizations and recapitalizations;

(s) Owner agrees to the terms of the Obligations and to the terms of any renewals, extensions, amendments, modifications, replacements or substitutions of the Obligations; Lender may enter into agreements in the future with Borrower which, if this Agreement so provides, will become Obligations secured by the Collateral described in this Agreement; property other than the Collateral may also secure the Obligations, but Lender shall have no obligation to exercise its rights against such property prior to exercising its rights against the Collateral, that Lender may accept substitutions or exchanges for any such property, and that Lender may release its security interest in such property at any time; parties other than Borrower may be or may become obligated under the Obligations; and

(t) This Agreement and the obligations described in this Agreement are executed and incurred for business and not consumer purposes.

**7. SALE OF COLLATERAL.** Owner shall not assign, convey, lease, sell, license, exchange or transfer any of the Collateral to any third party without the prior written consent of Lender except for sales of inventory to buyers in the ordinary course of business.

**8. FINANCING STATEMENTS AND OTHER DOCUMENTS.** Owner shall at any time and from time to time take all actions and execute all documents required by Lender to attach, perfect and maintain Lender's security interest in the Collateral and establish and maintain Lender's right to receive the payment of the proceeds of the Collateral including, but not limited to, executing any financing statements, fixture filings, continuation statements, notices of security interest and other documents required by the Uniform Commercial Code, presently or as hereafter amended or replaced, and other applicable law. Owner shall pay the costs of filing such documents in all offices wherever filing or recording is deemed by Lender to be necessary or desirable. Lender shall be entitled to perfect its security interest in the Collateral by filing carbon, photographic or other reproductions of this Agreement and/or the aforementioned documents with any authority required by the Uniform Commercial Code, presently or as hereafter amended or replaced, or other applicable law. Owner authorizes Lender to execute and file any financing statements, as well as extensions, renewals and amendments of financing statements in such form as Lender may require to perfect and maintain perfection of any security interest granted in this Agreement.

**9. INQUIRIES AND NOTIFICATION TO THIRD PARTIES.** Owner hereby authorizes Lender to contact any third party and make any inquiry pertaining to Owner's financial condition or the Collateral. In addition, Lender is authorized to provide oral or written notice of its security interest in the Collateral to any third party.

**10. LOCK BOX, COLLATERAL ACCOUNT.** If Lender so requests at any time (whether or not Owner is in default of this Agreement), Owner will direct each of its account debtors to make payments due under the relevant account or chattel paper directly to a special lock box to be under the control of Lender. Owner hereby authorizes and directs Lender to deposit into a special collateral account to be established and maintained with Lender all checks, drafts and cash payments received in the lock box. All deposits in the collateral account shall constitute proceeds of Collateral and shall not constitute payment of any Obligation. At its option, Lender may, at any time, apply finally collected funds on deposit in the collateral account to the payment of the Obligations in such order of application as Lender may determine, or permit Owner to withdraw all or any part of the balance on deposit in the collateral account. If a collateral account is so established, Owner agrees that Owner will promptly deliver to Lender, for deposit into the collateral account, all payments on accounts and chattel paper received by Owner. All such payments shall be delivered to Lender in the form received (except for Owner's endorsement if necessary). Until so deposited, all payments on accounts and chattel paper received by Owner shall be held in trust by Owner for and as the property of Lender and shall not be commingled with any funds or property of Owner.

MAST2068 © Harland Financial Solutions, Inc. (4/23/01) (800) 937-3799                                   Page 2 of 5

**11. COLLECTION OF INDEBTEDNESS FROM THIRD PARTIES.** Lender shall be entitled to and upon the request of Lender, Owner shall notify any account debtor or other third party (including, but not limited to, insurance companies) to pay any indebtedness or obligation owing to Owner and constituting the Collateral (collectively "Indebtedness") to Lender whether or not a default exists under this Agreement. Owner shall diligently collect the Indebtedness owing to Owner from its account debtors and other third parties until the giving of such notification. In the event that Owner possesses or receives possession of any instruments or other remittances with respect to the Indebtedness following the giving of such notification or if the instruments or other remittances constitute the prepayment of any Indebtedness or the payment of any insurance proceeds, Owner shall hold such instruments and other remittances in trust for Lender apart from its other property, endorse the instruments and other remittances to Lender, and immediately provide Lender with possession of the instruments and other remittances. Lender shall be entitled, but not required, to collect (by legal proceedings or otherwise), extend the time for payment, compromise, exchange or release any obligor or collateral, or otherwise settle any of the Indebtedness whether or not an event of default exists under this Agreement. Lender shall not be liable to Owner for any action, error, mistake, omission or delay pertaining to the actions described in this paragraph or any damages resulting therefrom.

**12. POWER OF ATTORNEY.** Owner hereby appoints Lender as its attorney-in-factto endorse Owner's name on all instruments and other remittances payable to Owner with respect to the Indebtedness, including any items received by Lender in any lockbox account, or other documents pertaining to Lender's actions in connection with the Indebtedness. In addition, Lender shall be entitled, but not required, to perform any action or execute any document required to be taken or executed by Owner under this Agreement. Lender's performance of such action or execution of such documents shall not relieve Owner from any obligation or cure any default under this Agreement. The powers of attorney described in this paragraph are coupled with an interest and are irrevocable.

**13. USE AND MAINTENANCE OF COLLATERAL.** Owner shall use the Collateral solely in the ordinary course of its business, for the usual purposes intended by the manufacturer (if applicable), with due care, and in compliance with the laws, ordinances, regulations, requirements and rules of all federal, state, county and municipal authorities including environmental laws and regulations and insurance policies. Owner shall not make any alterations, additions or improvements to the Collateral without the prior written consent of Lender. Owner shall ensure that Collateral which is not now a fixture does not become a fixture. Without limiting the foregoing, all alterations, additions and improvements made to the Collateral shall be subject to the security interest belonging to Lender, shall not be removed without the prior written consent of Lender, and shall be made at Owner's sole expense. Owner shall take all actions and make any repairs or replacements needed to maintain the Collateral in good condition and working order.

**14. LOSS OR DAMAGE.** Owner shall bear the entire risk of any loss, theft, destruction or damage (collectively "Loss or Damage") to all or any part of the Collateral. In the event of any Loss or Damage, Owner will either restore the Collateral to its previous condition, replace the Collateral with similar property acceptable to Lender in its sole discretion, or pay or cause to be paid to Lender the decrease in the fair market value of the affected Collateral. Lender has no duty to collect any income accruing on the Collateral or to preserve any rights relating to the Collateral.

**15. INSURANCE.** The Collateral will be kept insured for its full value against all hazards including loss or damage caused by fire, collision, theft or other casualty. If the Collateral consists of a motor vehicle, Owner will obtain comprehensive and collision coverage in amounts at least equal to the actual cash value of the vehicle with deductibles not to exceed $ _n/a_ . Insurance coverage obtained by Owner shall be from a licensed insurer subject to Lender's approval. Owner shall assign to Lender all rights to receive proceeds of insurance not exceeding the amount owed under the Obligations described above, and direct the insurer to pay all proceeds directly to Lender. The insurance policies shall require the insurance company to provide Lender with at least _n/a_ days' written notice before such policies are altered or cancelled in any manner. The insurance policies shall name Lender as a loss payee and provide that no act or omission of Owner or any other person shall affect the right of Lender to be paid the insurance proceeds pertaining to the loss or damage of the Collateral. In the event Owner fails to acquire or maintain insurance, Lender (after providing notice as may be required by law) may in its discretion procure appropriate insurance coverage upon the Collateral and charge the insurance cost as an advance of principal under the promissory note. Owner shall furnish Lender with evidence of insurance indicating the required coverage. Lender may act as attorney-in-factfor Owner in making and settling claims under insurance policies, cancelling any policy or endorsing Owner's name on any draft or negotiable instrument drawn by any insurer.

**16. INDEMNIFICATION.** Lender shall not assume or be responsible for the performance of any of Owner's obligations with respect to the Collateral under any circumstances. Owner shall immediately provide Lender with written notice of and hereby indemnifies and holds Lender and its shareholders, directors, officers, employees and agents harmless from all claims, damages, liabilities (including attorneys' fees and legal expenses), causes of action, actions, suits and other legal proceedings (collectively "Claims") pertaining to its business operations or the Collateral including, but not limited to, those arising from Lender's performance of Owner's obligations with respect to the Collateral or claims involving Hazardous Materials. Owner, upon the request of Lender, shall hire legal counsel to defend Lender from such Claims, and pay the attorneys' fees, legal expenses and other costs to the extent permitted by applicable law, incurred in connection therewith. In the alternative, Lender shall be entitled to employ its own legal counsel to defend such Claims at Owner's cost.

**17. TAXES AND ASSESSMENTS.** Owner shall execute and file all tax returns and pay all taxes, licenses, fees and assessments relating to its business operations and the Collateral including, but not limited to, income taxes, personal property taxes, withholding taxes, sales taxes, use taxes, excise taxes and workers' compensation premiums) in a timely manner.

**18. INSPECTION OF COLLATERAL AND BOOKS AND RECORDS.** Owner shall allow Lender or its agents to examine, inspect and make abstracts and copies of the Collateral and Owner's books and records pertaining to Owner's business operations and financial condition or the Collateral during normal business hours. Owner shall provide any assistance required by Lender for these purposes. All of the signatures and information pertaining to the Collateral or contained in the books and records shall be genuine, true, accurate and complete in all respects. Owner shall note the existence of Lender's security interest in its books and records pertaining to the Collateral.

**19. EVENTS OF DEFAULT.** An Event of Default will occur under this Agreement in the event that Owner, Borrower or any guarantor:

  (a) fails to make any payment under this Agreement or any other indebtedness to Lender when due;
  (b) fails to perform any obligation or breaches any warranty or covenant to Lender contained in this Agreement or any other present or future written agreement regarding this or any other indebtedness to Lender;
  (c) provides or causes any false or misleading signature or representation to be provided to Lender;
  (d) sells, conveys, or transfers rights in any Collateral without the written approval of Lender; destroys, loses or damages such Collateral in any material respect; or subjects such Collateral to seizure, confiscation, or condemnation;
  (e) seeks to revoke, terminate or otherwise limit its liability under any continuing guaranty;
  (f) has a garnishment, judgment, tax levy, attachment or lien entered or served against Owner, Borrower, or any guarantor, or any of their property including the Collateral;
  (g) dies, becomes legally incompetent, is dissolved or terminated, ceases to operate its business, becomes insolvent, makes an assignment for the benefit of creditors, fails to pay any debts as they become due, or becomes the subject of any bankruptcy, insolvency or debtor rehabilitation proceeding;
  (h) allows the Collateral to be used by anyone to transport or store goods, the possession, transportation, or use of which, is illegal;
  (i) fails to provide Lender evidence of satisfactory financial condition;
  (j) has a majority of its outstanding voting securities sold, transferred or conveyed to any person or entity other than any person or entity that has the majority ownership as of the date of the execution of this Agreement; or
  (k) causes Lender to deem itself insecure due to a significant decline in the value of any of the Collateral or Lender, in good faith, believes the prospect of payment or performance is impaired.

**20. RIGHTS OF LENDER ON EVENT OF DEFAULT.** Upon the occurrence of an Event of Default under this Agreement, Lender shall be entitled to exercise one or more of the following remedies without notice or demand (except as required by law):

  (a) to declare the Obligations immediately due and payable in full, such acceleration shall be automatic and immediate if the Event of Default is a filing under the Bankruptcy Code;
  (b) to collect the outstanding Obligations with or without resorting to judicial process;
  (c) to change Owner's mailing address, open Owner's mail, and retain any instruments or other remittances constituting the Collateral contained therein;
  (d) to take possession of any Collateral in any manner permitted by law;
  (e) to apply for and obtain, without notice and upon ex parte application, the appointment of a receiver for the Collateral without regard to Owner's financial condition or solvency, the adequacy of the Collateral to secure the payment or performance of the obligations, or the existence of any waste to the Collateral;
  (f) to require Owner to deliver and make available to Lender any Collateral at a place reasonably convenient to Owner and Lender;
  (g) to sell, lease or otherwise dispose of any Collateral and collect any deficiency balance with or without resorting to legal process;
  (h) to set-off Owner's obligations against any amounts due to Owner including, but not limited to, monies, instruments, and deposit accounts maintained with Lender; and
  (i) to exercise all other rights available to Lender under any other written agreement or applicable law.

Lender's rights are cumulative and may be exercised together, separately, and in any order. Unless the Collateral is perishable, threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will provide reasonable notification of the time and place of any sale or intended disposition as required under the Uniform Commercial Code, presently or as hereafter amended or replaced. Lender has no obligation to clean up or otherwise prepare the Collateral for sale. Lender may comply with any applicable state or federal law requirements in connection with a disposition of the Collateral and compliance will not be considered adversely to affect the commercial reasonableness of any sale of the Collateral. If the Collateral consists of securities, Lender shall be entitled to transfer the securities into the name of Lender or its designee and to vote the securities. Lender shall be authorized to notify the issuer of the securities to remit any related dividends, interest and securities resulting from stock splits, reorganizations and capitalizations directly to Lender or its designee. In the event that Lender institutes an action to recover any Collateral or seeks recovery of any Collateral by way of a prejudgment remedy in an action against Owner, Owner waives the posting of any bond which might otherwise be required. Owner shall segregate all proceeds of Collateral and hold such proceeds in trust for Lender. Lender's remedies under this paragraph are in addition to those available at common law, such as offset.

**21. APPLICATION OF PAYMENTS.** [unclear] or not a default has occurred under this [unclear] ment, all payments made by or on behalf of Owner and all credits due to Owner from the disposition of the Collateral or otherwise may be applied against the amounts paid by Lender (including attorneys' fees and legal expenses) in connection with the exercise of its rights or remedies described in this Agreement and any interest thereon and then to the payment of the remaining Obligations in whatever order Lender chooses.

**22. ADVANCES TO PERFORM COVENANTS.** Owner shall reimburse Lender for all amounts (including attorneys' fees and legal expenses) expended by Lender in the performance of any action required to be taken by Owner or the exercise of any right or remedy belonging to Lender under this Agreement, together with interest thereon at the lower of the highest rate described in any promissory note or credit agreement executed by Borrower or Owner or the highest rate allowed by law from the date of payment until the date of reimbursement. These sums shall be included in the definition of Obligations, shall be secured by the Collateral identified in this Agreement and shall be payable upon demand. Lender has no duty to take any action to protect the value of the Collateral or to exercise any rights of the Owner with respect to the Collateral.

**23. ASSIGNMENT.** Owner shall not be entitled to assign any of its rights, remedies or obligations described in this Agreement without the prior written consent of Lender. Consent may be withheld by Lender in its sole discretion. Lender shall be entitled to assign some or all of its rights and remedies described in this Agreement without notice to or the prior consent of Owner in any manner.

**24. MODIFICATION AND WAIVER.** The modification or waiver of any of Owner's Obligations or Lender's rights under this Agreement must be contained in a writing signed by Lender. Lender may perform any of Owner's Obligations or delay or fail to exercise any of its rights without causing a waiver of these Obligations or rights. A waiver on one occasion shall not constitute a waiver on any other occasion. Owner's Obligations under this Agreement shall not be affected if Lender amends, compromises, exchanges, fails to exercise, impairs or releases any of the obligations belonging to any Owner or third party or any of its rights against any Owner, third party, Collateral or any other property securing the Obligations. Owner waives any right it may have to require Lender to pursue any third person for any of the Obligations.

**25. SUCCESSORS AND ASSIGNS.** This Agreement shall be binding upon and inure to the benefit of Owner and Lender and their respective successors, assigns, trustees, receivers, administrators, personal representatives, legatees, and devisees.

**26. NOTICES.** Any notice or other communication to be provided under this Agreement shall be in writing and sent to the parties at the addresses described in this Agreement or such other address as the parties may designate in writing from time to time.

**27. SEVERABILITY.** If any provision of this Agreement violates the law or is unenforceable, the rest of the Agreement shall remain valid.

**28. APPLICABLE LAW.** This Agreement shall be governed by the laws of the state of ___Kansas___, except to the extent that the Uniform Commercial Code, presently or as hereafter amended or replaced, provides for the application of the law of the state of Owner's location, as indicated in paragraph 5. Unless applicable law provides otherwise, Owner consents to the jurisdiction and venue of any court located in such state selected by Lender in the event of any legal proceeding under this Agreement.

**29. COLLECTION COSTS.** To the extent permitted by law, Owner agrees to pay Lender's reasonable fees and costs of attorneys and other agents (including without limitation paralegals, clerks and consultants), whether or not such attorney or agent is an employee of Lender, which are incurred by Lender in collecting any amount due or enforcing any right or remedy under this Agreement, whether or not suit is brought, and including, but not limited to, all fees and costs incurred on appeal, in bankruptcy, and for post-judgment collection actions.

**30. MISCELLANEOUS.** This Agreement is executed for commercial purposes. Owner shall supply information regarding Owner's business operations and financial condition or the Collateral in the form and manner as requested by Lender from time to time. All information furnished by Owner to Lender shall be true, accurate and complete in all respects. Owner and Lender agree that time is of the essence. Owner waives presentment, demand for payment, notice of dishonor and protest except as required by law. All references to Owner in this Agreement shall include all parties signing below except Lender. This Agreement shall be binding upon the heirs, successors and assigns of Owner and Lender. If there is more than one Owner, their obligations under this Agreement shall be joint and several. This Agreement shall remain in full force and effect until Lender provides Owner with written notice of termination. This Agreement represents the complete and integrated understanding between Owner and Lender regarding the terms hereof.

**31. WAIVER OF JURY TRIAL.** LENDER AND OWNER HEREBY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY CIVIL ACTION ARISING OUT OF, OR BASED UPON, THIS SECURITY AGREEMENT.

**32. ADDITIONAL TERMS:**

---

OWNER ACKNOWLEDGES THAT OWNER HAS READ, UNDERSTANDS, AND AGREES TO THE TERMS AND CONDITIONS OF THIS AGREEMENT. OWNER ACKNOWLEDGES RECEIPT OF AN EXACT COPY OF THIS AGREEMENT.

Dated: **September 24, 2003**

LENDER: **THE UNIVERSITY NATIONAL BANK**

By _____
LESLIE J DREILING
EXEC. VICE - PRESIDENT

OWNER: _____

OWNER: **GALEN L WEBER**

GALEN L WEBER

OWNER: _____

OWNER: _____

OWNER: _____

OWNER: _____

OWNER: _____

LIAST2080  © Harland Financial Solutions, Inc. (4/23/01) (800) 937-3799                                   Page 4 of 6

20,000 SHARES OF WEBSTER'S, INC. STOCK NUMBER 2, IN THE NAME OF GALEN L. WEBER

SCHEDULE B

Record Owner Name:

SCHEDULE C

SCHEDULE D

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $149,471.22 | 12-16-2010 | 02-01-2011 | 18594 | 330 | | KEP | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** WEBSTER'S, INC.
801 N 2ND ST
LAWRENCE, KS 66044

**Lender:** THE UNIVERSITY NATIONAL BANK
P.O. BOX 1777, 1400 KASOLD DR
LAWRENCE, KS 66044
(785) 841-1988

**Principal Amount: $149,471.22**                    **Date of Agreement: December 16, 2010**

**DESCRIPTION OF CHANGE IN TERMS.** EXTEND MATURITY DATE FROM 1/1/2011 TO 2/1/2011. A FINAL PAYMENT OF THE UNPAID PRINCIPAL BALANCE PLUS ACCRUED INTEREST IS DUE AND PAYABLE ON 2/1/2011. .

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

Borrower's Initials

Lender's Initials

**NO ORAL AGREEMENTS.** This written agreement is the final expression of the agreement between Lender and Borrower and may not be contradicted by evidence of any prior oral agreement or of a contemporaneous oral agreement between Lender and Borrower.

**NONSTANDARD TERMS.** The following space contains all nonstandard terms, including all previous oral agreements, if any, between Lender and Borrower:

By initialing the boxes to the left, Lender and Borrower affirm that no unwritten oral agreement exists between them.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER:

WEBSTER'S, INC.

By: _____
    GALEN L WEBER, President of WEBSTER'S, INC.

LENDER:

THE UNIVERSITY NATIONAL BANK

X _____
    Kenneth E Pearce, Senior Vice President

LASER PRO Lending, Ver. 5.54.00.006 Copr. Harland Financial Solutions, Inc. 1997, 2010. All Rights Reserved. - KS R:\CFI\LPL\D20C.FC TR-134 PR-47

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $389,000.00 | 12-16-2010 | 02-15-2011 | 18597 | | | KEP | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** WEBSTER'S, INC.
801 N 2ND ST
LAWRENCE , KS 66044

**Lender:** THE UNIVERSITY NATIONAL BANK
P.O. BOX 1777, 1400 KASOLD DR
LAWRENCE, KS 66044
(785) 841-1988

**Principal Amount: $389,000.00**                    **Date of Agreement: December 16, 2010**

**DESCRIPTION OF CHANGE IN TERMS.** DECREASE LINE OF CREDIT FROM $400,000.00 TO $389,000.00 AND EXTEND MATURITY DATE FROM 12/21/10 TO 2/15/11. NEXT PAYMENT OF $1,200.00 PRINCIPAL AND OUTSTANDING INTEREST DUE 1/15/2011. A FINAL PAYMENT OF THE UNPAID PRINCIPAL BALANCE PLUS ACCRUED INTEREST IS DUE AND PAYABLE ON 2/15/2011.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

| | |
|---|---|
| Borrower's Initials | **NO ORAL AGREEMENTS.** This written agreement is the final expression of the agreement between Lender and Borrower and may not be contradicted by evidence of any prior oral agreement or of a contemporaneous oral agreement between Lender and Borrower. |
| Lender's Initials | **NONSTANDARD TERMS.** The following space contains all nonstandard terms, including all previous oral agreements, if any, between Lender and Borrower: |
| | **By initialing the boxes to the left, Lender and Borrower affirm that no unwritten oral agreement exists between them.** |

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

**BORROWER:**

WEBSTER'S, INC.

By: _____
GALEN L WEBER, President of WEBSTER'S, INC.

**LENDER:**

THE UNIVERSITY NATIONAL BANK

X _____
Kenneth E Peirce, Senior Vice President

LASER PRO Lending, Ver. 5.54.00.006 Copr. Harland Financial Solutions, Inc. 1997, 2010. All Rights Reserved. - KS R:\CFI\LPL\D20C.FC TR-195 PR-47

EXHIBIT I

# MODIFICATION AGREEMENT

Name:                                                          Street Address:
WEBSTER'S INC.                                                 801 N 2ND ST

City:                County:              State:                Zip Code:
LAWRENCE             DOUGLAS              KS                    66044

Loan Number 18594
On 12/16/10, the undersigned Borrower ("Borrower") executed a Promissory Note
("Note") in favor of:

The University National Bank

This Note is in the principal amount of $149,471.22 bearing interest at 6.00%, to be
retired in 0 payments and 1 BALLOON at maturity on or before 2/01/11.  Bank remains
the holder and owner of the Note and has agreed with Borrower to modify certain
provisions of the Note.  Therefore, in connection with the provisions contained in this
Instrument and the exchange of other good and valuable consideration, the receipt and
sufficiency of which are acknowledged, Bank and Borrower agree to amend the Note as
follows:

☐         The face amount of the Note is changed from $_____ to $_____.

☒         The payment schedule is amended as follows: INTEREST MONTHLY
          BEGINNING MARCH 25, 2011.

☒         The maturity dated is changed to 5/25/2011.

☐         The interest rate is amended to _%.

☐         An additional modification to the note is: _____.

                                        Initials        Initial

Revised 2/09

EXHIBIT J

The amendment and modifications described above are carried forward and apply to any and all other documents which refer to or are in any way related to the Note. All other terms, conditions and covenants in the Note, not otherwise modified by this instrument, shall be and remain the same, and this Agreement, when executed by Bank and Borrower, shall be attached to and become a part of the original Note.

The date on which the above modifications become effective is:

2/25/2011

EXECUTED this 1st day of March , 20 11 .

The University National Bank                     Borrower: WEBSTER'S INC.

_____          _____
KENNETH E PEIRCE                                  BY: GALEN L WEBER, PRESIDENT

                                                                _____

This document, together with other written agreement of the parties, is the final expression of the agreement between the parties. This document may not be contradicted by evidence of prior or contemporaneous oral agreements of the parties. Any credit agreement not contained in the printed form must be inserted below to be enforceable.

There are no unwritten oral agreements between the parties

Bank _____          Debtor _____
        KENNETH E PEIRCE                                       WEBSTER'S INC.
                                                          BY: GALEN L WEBER, PRESIDENT

                                                          Debtor _____

NOTICE TO CONSUMER: 1. Do not sign this agreement before you read it. 2. You are entitled to a copy of the agreement. 3. You may repay the unpaid balance at any time without penalty and may be entitled to receive a refund of unearned charges in accordance with law.

Revised 2/09

# MODIFICATION AGREEMENT

Name:                                                    Street Address:
WEBSTER'S INC.                                           801 N 2ND ST

City:              County:           State:                    Zip Code:
LAWRENCE           DOUGLAS           KS                         66044

Loan Number 18597
On 12/16/10, the undersigned Borrower ("Borrower") executed a Promissory Note
("Note") in favor of:

The University National Bank

This Note is in the principal amount of $389,000.00 bearing interest at 6.00%, to be
retired in 1 payments and 1 BALLOON at maturity on or before 2/15/11. Bank remains
the holder and owner of the Note and has agreed with Borrower to modify certain
provisions of the Note. Therefore, in connection with the provisions contained in this
Instrument and the exchange of other good and valuable consideration, the receipt and
sufficiency of which are acknowledged, Bank and Borrower agree to amend the Note as
follows:

☐          The face amount of the Note is changed from $_____ to $_____.

☒          The payment schedule is amended as follows: INTEREST MONTHLY
           BEGINNING MARCH 25, 2011.

☒          The maturity dated is changed to 5/25/2011.

☐          The interest rate is amended to _%.

☐          An additional modification to the note is: _____.

                                                    _____    _____
                                                    Initials       Initial

Revised 2/09

EXHIBIT K

The amendment and modifications described above are carried forward and apply to any and all other documents which refer to or are in any way related to the Note. All other terms, conditions and covenants in the Note, not otherwise modified by this instrument, shall be and remain the same, and this Agreement, when executed by Bank and Borrower, shall be attached to and become a part of the original Note.

The date on which the above modifications become effective is:

2/25/2011

EXECUTED this 1st day of March , 2011 .

The University National Bank                    Borrower: WEBSTER'S INC.

_____                          _____
KENNETH E PEIRCE                                 BY: GALEN L WEBER, PRESIDENT

                                                 _____

This document, together with other written agreement of the parties, is the final expression of the agreement between the parties. This document may not be contradicted by evidence of prior or contemporaneous oral agreements of the parties. Any credit agreement not contained in the printed form must be inserted below to be enforceable.

There are no unwritten oral agreements between the parties

Bank _____                     Debtor _____
      KENNETH E PEIRCE                                    WEBSTER'S INC.
                                                          BY: GALEN L WEBER, PRESIDENT

                                                 Debtor _____

NOTICE TO CONSUMER: 1. Do not sign this agreement before you read it. 2. You are entitled to a copy of the agreement. 3. You may repay the unpaid balance at any time without penalty and may be entitled to receive a refund of unearned charges in accordance with law.

**Galen L. Weber**
**Lawrence, Kansas**
**Statement of Assets, Liabilities and Net Worth**
**as of December 31, 2010**

## CURRENT ASSETS

| | | |
|---|---|---|
| Cash | $ | 1,734.00 |
| Savings | $ | 7,366.00 |
| IRA's and KPERS | $ | 149,025.00 |
| Personal Residence | $ | 213,300.00 |
| Stock - Webster's Inc. | $ | 661,247.00 |
| Automobiles | $ | 28,185.00 |
| Household Personal | $ | 43,390.00 |

**TOTAL ASSETS**   $  1,104,247.00

### LIABILITIES

| | | |
|---|---|---|
| University Bank | $ | 149,471.00 |
| University Bank Flooring | $ | 309,920.00 |
| Personal Residence | $ | 29,142.00 |
| Midwest Credit Union | $ | 45,922.00 |
| Credit Cards | $ | 55,582.00 |

**TOTAL LIABILITES**   $   590,037.00

**NET WORTH**   $   514,210.00

$  1,104,247.00

I certify the above to be true and correct to best of my knowledge.

Dated 1/4/11        Signature _____

EXHIBIT L

# WEBSTER'S, INC.
## Balance Sheet
### As of December 31, 2010

*(handwritten, top)* 3.1.2011

*(handwritten, top right)* 2. Statements submitted a different dates 2.28.11 ; 2.28.11 / presented on 3.1.11

| | Dec 31, 10 |
|---|---|
| **ASSETS** | |
| **Current Assets** | |
| **Checking/Savings** | |
| 11000 · UNIVERSITY NATIONAL BANK | 9,097.14 |
| **Total Checking/Savings** | 9,097.14 |
| **Other Current Assets** | |
| 25000 · NOTE RECEIVABLE SHAREHOLDER | 281,826.25 |
| 30900 · INVENTORY | 309,220.05 |
| 40000 · DEPRECIABLE ASSETS | 129,224.42 |
| 47000 · ACCUMULATED DEPRECIATION | -109,796.00 |
| **Total Other Current Assets** | 611,174.72 |
| **Total Current Assets** | 620,271.86 |
| **TOTAL ASSETS** | 620,271.86 |
| **LIABILITIES & EQUITY** | |
| **Liabilities** | |
| **Current Liabilities** | |
| **Other Current Liabilities** | |
| 2100 · Payroll Liabilities | 174,347.18 |
| 60250 · UNB FLOOR PLAN | 309,220.05 |
| 63100 · FEDERAL UNEMPLOYMENT TAX | 112.00 |
| 66000 · CUSTOMER DEPOSITS | 40,500.00 |
| 66000 · NOTE PAYABLE UNB | 149,471.22 |
| 66500 · NOTE PAYABLE - GALEN WEBER | 82,050.01 |
| 66750 · LOAN | 8,099.46 |
| **Total Other Current Liabilities** | 415,816.46 |
| **Total Current Liabilities** | 415,816.46 |
| **Total Liabilities** | 415,816.46 |
| **Equity** | |
| 70000 · CAPITAL STOCK | 10,000.00 |
| 73000 · ACCUMULATED ADJUSTMENTS ACCOUNT | 40,574.71 |
| 75000 · Retained Earnings | 279,919.59 |
| Net Income | -126,038.90 |
| **Total Equity** | 204,455.40 |
| **TOTAL LIABILITIES & EQUITY** | 620,271.86 |

*(handwritten notes at right)* = 0 - unable to change

*(handwritten)* Note payable Trad ?

*(handwritten section at bottom)*

FINANCING OPTIONS:

TRIAD FINANCIAL - 1ST SOURCE FOR CHATTEL

21ST MORTGAGE - (OWNED BY WARREN BUFFET)

U.S. BANK

NEW CENTURY BANK - LAND/HOME

DEBRA HANNAH - MTG BROKER OUT OF K.C. = LAND ; HOME